## ETTLINGER v. TRUSTEES OF RANDOLPH-MACON COLLEGE.

Circuit Court of Appeals, Fourth Circuit.
April 9, 1929.

No. 2805.

Robert H. Talley, of Richmond, Va. (Edward F. Eldridge, of Richmond, Va., on the brief), for appellant.

A. W. Patterson; of Richmond, Va., and W. C. Armstrong, of Front Royal, Va., for appellee.

Before PARKER, Circuit Judge, and McDOWELL and SOPER, District Judges.

PARKER, Circuit Judge. This action was instituted in the court below in behalf of one Reginald Ettlinger, hereafter called the plaintiff, against the Trustees of Randolph-Macon College, Inc., as defendant, to recover damages for personal injuries sustained by him when the Randolph-Macon Military Academy at Front Royal, Va., was destroyed by fire. The academy was owned by the defendant, and plaintiff was a student therein. He alleges that defendant was negligent in not maintaining the electric wiring and fixtures in the academy in proper condition, in not providing that building with adequate fire escapes, and in not maintaining a night watchman on the premises. The trial judge directed a verdict for defendant, and from a judgment thereon plaintiff has appealed.

The defendant is a nonstock corporation chartered and organized at the instance of the Conference of the Methodist Episcopal Church of Virginia, for the purpose of carrying on the work of education. . It operates a system of schools and colleges, not for the sake of profit, but for the education and enlightenment of the people. Its property has come to it through charitable gifts and bequests, and this together with what is received from tuition is used for the purpose of education. It makes special rates to sons of ministers and young men studying for the ministry and loans to needy and deserving students. A charge is made for board and tuition, but the amount realized therefrom does not by any means equal the cost of the work which is being carried on. The Military Academy at. Front Royal was one of the schools operated by defendant, and plaintiff was attending it as a regular paying student.

On the 10th day of January, 1927, early in the morning, the academy building was destroyed by fire. Plaintiff was sleeping on the third floor, and when he awoke the fire had gained such headway, and the hall into which his room opened was so filled with smoke, that he could not reach a fire escape and was unable even to go from his room into the hall. He accordingly jumped from the window of his room to a blanket which was being held for him in the yard below, and in doing so received the injuries of which he complains. Verdict was directed on the ground that, being an eleemosynary institution, defendant was not liable for the negligence alleged.

We have reviewed the evidence carefully; and, even if we lay to one side the fact that defendant is an eleemosynary institution, we think that the verdict was properly directed, as the evidence failed to establish that plaintiff's injury was due to the negligence of the defendant or its employees. It was shown without contradiction that the defects in the electrical wiring and fixtures upon which plaintiff relied had been repaired prior to the fire. There was no evidence upon which a jury could have found that there was a duty on the part of the defendant to maintain a night watchman in the building or that the ·presence of such a watchman would have prevented plaintiff's injury. And it was shown that the building was equipped with fire escapes, approved by the proper public authorities, and that there were other means of escape from the third floor, which plaintiff could have utilized had it not been for the blinding smoke in the hallway. As he could not get beyond the door of his room on account of the smoke, additional fire escapes would have been as useless to him as those which existed, and their absence could not possibly be said to have been the proximate cause of his injury.

But we think, also, that the learned trial judge was correct in holding that the defendant was an eleemosynary institution and as such was not liable to plaintiff on account of the negligence of its officers, agents, or servants. "The eleemosynary sort of corporations," says Blackstone, "are such as are constituted for the perpetual distributions of the free alms or bounty of the founder of them, to such persons as he has directed. Of this are all hospitals for the maintenance of the poor, sick and impotent; and all colleges both in our universities and out of them." 1 Bl. Com. 471. It is clear that a corporation is to be deemed eleemosynary or charitable where its property is derived from charitable gifts or bequests and is administered, not for the purpose of gain, but in the interest of humanity; and an educational institution, established and endowed by private charity, falls clearly within the classification. See Dartmouth College v. Woodward, 4 Wheat. 518, 633, 634, 4 L. Ed. 629, and argument of Mr. Webster at page 561 et seq.; Currier v. Dartmouth College (C. C.) 105 F. 886; Abston v. Waldon Academy, 118 Tenn. 24, 102 S. W. 351, 11 L. R. A. (N. S.) 1179;

2

Parks v. Northwestern University, 218 Ill. 381, 75 N. E. 991, 2 L. R. A. (N. S.) 556, 4 Ann. Cas. 103; McDonald v. Massachusetts General Hospital, 120 Mass. 432, 21 Am. Rep. 529.

And it is equally clear both that the eleemosynary or charitable nature of an educational institution is not destroyed by the fact that it makes a charge for tuition, and that the payment of tuition by its students does not prevent their being considered beneficiaries of the charity. The evidence in this case is that the charges made by defendant cover only a part of the cost of carrying on its work; and it is a matter of general and common knowledge that the tuition and other charges of public educational institutions and those which are privately endowed are much lower than would be required to pay even their running expenses, being purposely made low so that education may be placed within the reach of those who need it. In a very direct and practical sense, therefore, not only are such institutions engaged in a work of charity, but the pay student as well as others is a beneficiary thereof. And, apart from the fact that what such a student pays does not equal the cost of his education, he is a beneficiary of the charity for the reason that but for the charitable gifts made to the institution and the charitable work which it is carrying on, it would not exist to serve him. These principles are settled by the overwhelming weight of authority. Powers v. Massachusetts Homeopathic Hospital (C. C. A. 1st) 109 F. 294, 65 L. R. A. 372; Hospital of St. Vincent of Paul v. Thompson, 116 Va. 101, 81 S. E. 13, 51 L. R. A. (N. S.) 1025; St. Mary's Academy v. Solomon, 77 Colo. 463, 238 P. 22, 42 A. L. R. 964; Parks v. Northwestern University, supra; Jensen v. Maine Eye & Ear Infirmary, 107 Me. 408, 78 A. 898, 33 L. R. A. (N. S.) 141; Downes v. Harper Hospital, 101 Mich. 555, 60 N. W. 42, 25 L. R. A. 602, 45 Am. St. Rep. 427; Duncan v. Nebraska Sanitarium & B. Ass'n, 92 Neb. 162, 137 N. W. 1120, 41 L. R. A. (N. S.) 973, Ann. Cas. 1913E, 1127; Taylor v. Protestant Hospital Ass'n, 85 Ohio St. 90, 96 N. E. 1089, 39 L. R. A. (N. S.) 427; Gable v. Sisters of St. Francis, 227 Pa. St. 254, 75 A. 1087, 136 Am. St. Rep. 879; Lindler v. Columbia Hospital, 98 S. C. 25, 81 S. E. 512; Schloendorff v. Society of New York Hospital, 211 N. Y. 125, 105 N. E. 92, 52 L. R. A. (N. S.) 505, Ann. Cas. 1915C, 581; 5 R. C. L. 377.

Since, therefore, it appears not only that the defendant is an eleemosynary institution, but also that plaintiff was a beneficiary of the charity which it administers, we think there can be no question that defendant could not be held liable to him for the negligence alleged. "The courts are practically agreed that a charitable institution is not responsible to those who avail themselves of its benefits for any injuries they may sustain through the negligence or torts of its managers, agents and servants." See notes 139 Am. St. Rep. 900, 14 A. L. R. 572, 23 A. L. R. 923, 30 A. L. R. 455, 33 A. L. R. 1369, and 42 A. L. R. 971, and cases cited therein, and particularly Heriot's Hospital v. Ross, 12 Clark & F. 507, 8 Eng. Reprint 1508; Paterlini v. Memorial Hospital Ass'n (C. C. A. 3rd) 247 F. 639; Powers v. Massachusetts Homoeopathic Hospital (C. C. A. 1st) 109 F. 294, 65 L. R. A. 372; Union Pac. R. Co. v. Artist (C. C. A. 8th) 60 F. 365, 23 L. R. A. 581; Weston's Adm'x v. Hospital of St. Vincent of Paul, 131 Va. 587, 107 S. E. 785, 23 A. L. R. 907; Downes v. Harper Hospital, 101 Mich. 555, 60 N. W. 42, 25 L. R. A. 602, 45 Am. St. Rep. 427; Roosen v. Peter Bent Brigham Hospital, 235 Mass. 66, 126 N. E. 392, 14 A. L. R. 563; Abston v. Waldon Academy, 118 Tenn. 24, 102 S. W. 351, 11 L. R. A. (N. S.) 1179.

The case last cited is practically on "all fours" with the case at bar. There the plaintiff, a young girl, was a student at an academy in Tennessee which was maintained by an eleemosynary corporation. She was injured by jumping from a third story window when one of the academy buildings was destroyed by fire, and she charged the corporation with negligence in failing to provide the building with proper fire escapes. The court held that there was no liability, basing its decision upon the eleemosynary nature of the institution.

As stated above, the courts are practically agreed upon the rule of law applicable here; but they are by no means agreed upon the reason for the rule, and this disagreement has given rise to much discussion on the part of the courts themselves and of textwriters and annotators, as will be readily seen by reference to the above notes and authorities. We do not deem it necessary to choose between the conflicting theories or to enter into the rather inviting field of theoretical discussion. Some courts have based the rule upon the theory that the funds of eleemosynary institutions are held in trust for charitable purposes and may not be diverted to the payment of damages on account of wrongs committed by those who administer them. Other courts base it upon the theory that the doctrine respondeat superior, being

itself based upon the theory that the principal derives a benefit from the services of the employee or agent for whose negligence he is held liable, has no application where the service of the employee is for the benefit of humanity and not for the gain of the institution which employs him. Others base it upon broad grounds of public policy, holding that, as the institution is engaged in work highly beneficial to the state and to humanity, its funds ought not be diverted from this important purpose to the payment of private claims for damages. And still others base it upon the theory of an implied agreement on the part of one accepting the benefits of a charity not to hold it liable for injuries which he may receive at the hands of its servants.

All of these theories have to a greater or less extent entered into the formulation of the rule of law which has now become too well settled to be questioned or overturned. Underlying all of them is the matter of public policy, and it is upon this that the rule may be said finally to rest. The theory that trust funds are not to be taken under execution for the torts of those who administer them rests, in the last analysis, upon considerations of public policy, as does the holding that the rule respondeat superior shall not apply to the agents and servants of a charity. So also, the theory of implied agreement can be sustained only if the agreement be conceived of as implied in law as a matter of public policy. But, resting upon public policy, the rule rests upon a sufficiently firm foundation. A policy of the law which prevents him who accepts the benefit of a charity from suing it for the torts of its agents and servants, and thus taking for his private use the funds which have been given for the benefit of humanity, which shields gifts made to charity from "the hungry maw of litigation" and conserves them for purposes of the highest importance to the state, carries on its face its own justification, and, without the aid of metaphysical reasoning, commends itself to the wisdom of mankind. It is significant that almost without exception the courts, while giving different reasons for the rule, have not hesitated to apply it where the one seeking to enforce liability against a charitable institution is one who has accepted benefits from it. In Rhode Island the Supreme Court refused to follow the rule, but the succeeding Legislature proceeded to establish it by statute. There is quite a conflict of authority as to the liability of a charitable corporation to employees or strangers; but we need not consider these cases, as they have no application here.

Counsel for plaintiff attempt to distinguish the case at bar from the many other cases against charitable institutions, on the ground that the negligence here alleged is not the careless act of a nurse or other employee, but the negligence of the managers of the corporation themselves in failing to maintain the academy building in a safe condition. We do not think, however, that this is a valid distinction. If there had been negligence in the respects claimed, it would have been the negligence of those who were carrying on the charitable work in which the corporation was engaged; and we see no more reason for diverting the funds of the charity on account of their negligence than there would be if the negligence had been that of any minor employee. The exemption arises, not from anything relating to the grade of the agent or employee, but from the principle that the funds of a charity ought not be diverted from the purpose for which they have been given, to pay damages to a beneficiary on account of the wrongs or negligence of those who administer the charity. It is true that many of the cases have stated the rule to be that a charitable corporation is not liable for the torts of its agents where due care is used in selecting them. This, however, is a correct statement of the rule properly applicable in the case of ordinary private corporations who employ physicians and surgeons to treat their injured employees. See Metzger v. Western Maryland R. Co. (C. C. A. 4th) 30 F.(2d) 50; Powers v. Massachusetts Homoeopathic Hospital (C. C. A. 1st) 109 F. 294, 298, 65 L. R. A. 372. We do not think that it is properly applicable in the case of charitable corporations. The subject was thoroughly considered by Chief Justice Rugg of Massachusetts in Roosen v. Peter Bent Brigham Hospital, supra, 235 Mass. 66, 126 N. E. 392, 14 A. L. R. 563, and we agree with the conclusion which he reached in that case. Said he:

"There is no sound distinction in reason between the liability of a hospital for the negligence of its inferior agents and its liability for the carelessness of its managers. The conduct of both relates to the execution of the charity. The inferior agents usually work for pay, while the managing officers as matter of common knowledge generally undertake the administration of the public charity without compensation, solely out of public spirit in a desire to serve the general welfare. If the hospital is held responsible for their acts of negligence, the funds devoted to the relief of suffering humanity must be diverted in the one instance to the same extent

and manner as in the other to the payment of claims wholly foreign to the purposes of the public trust."

South Carolina is one of the states which base the exemption from liability of charitable corporations solely upon grounds of public policy. The same question was raised in the Supreme Court of that state as is raised here upon an action for damages arising out of the falling of a gallery in a college auditorium. Vermillion v. Women's College of Due West, 104 S. C. 197, 88 S. E. 649. The opinion was written by the late Justice Hydrick. In discussing the contention that that case was distinguished from the earlier case of Lindler v. Columbia Hospital, supra, in that plaintiff was not a beneficiary of the charity and in that the negligence was not that of a servant but of the corporation itself, the learned judge used language which, in so far as it relates to the negligence of the managing officers of the corporation, is directly applicable here. Said he:

"These differences in the facts of the two cases make no difference in the applicable law, because the exemption of public charities from liability in actions for damages for tort rests not upon the relation of the injured person to the charity, but upon grounds of public policy, which forbids the crippling or destruction of charities which are established for the benefit of the whole public to compensate one or more individual members of the public for injuries inflicted by the negligence of the corporation itself, or of its superior officers or agents, or of its servants or employees. The principle is that, in organized society, the rights of the individual must, in some instances, be subordinated to the public good. It is better for the individual to suffer injury without compensation than for the public to be deprived of the benefit of the charity. The law has always favored and fostered public charities in ways too numerous to mention, because they are most valuable adjuncts of the state in the promotion of many of the purposes for which the state itself exists. That being so, what difference can it make whether the tort is that of the corporation itself or its superior officers and agents, or that of its servants? Liability for the one would as effectually embarrass or sweep away the charity as the other. It would, therefore, be illogical to admit liability for the one and deny it for the other."

In Fordyce v. Woman's Christian Nat. Library Ass'n, 79 Ark. 550, 96 S. W. 155, 7 L. R. A. (N. S.) 485, Judge Rose thus tersely and unanswerably states the reasons why the exemption from liability is not confined to cases involving negligence of minor employees:

"The immunity of the property of a charity from sale under execution rests on special grounds. The property of a corporation organized solely for charitable purposes is exclusively dedicated to public uses, as much so as the streets and alleys of a town or city; for this purpose the corporation is a mere trustee. Benton v. Boston City Hospital, 140 Mass. 13, 18 [54 Am. Rep. 436, 1 N. E. 836]. It is of primary importance to the public that the trust shall be perpetuated. The trustees of the corporation are usually unsalaried agents, devoting their time and labor to the use and benefit of the public. For their own wrongs and misdeeds they are personally answerable, just as are the physician and the attendants in a hospital. If the doctrine of respondeat superior is applied to them, it follows that, along with their other powers, they possess an implied power to destroy, by a willful violation of their duties, by collusion, or by negligence, the public interests that they are selected to preserve."

A number of the cases, while not going into the distinction which plaintiff attempts here to make, deny recovery against charitable corporations, where the negligence alleged was not that of a minor employee but related to the condition of the premises. Thus, in Abston v. Waldon Academy, supra, almost "on all fours" with this case, the negligence alleged was failure to provide adequate fire escapes, and in Loeffler v. Trustees of Sheppard & Enoch Pratt Hospital, 130 Md. 265, 100 A. 301, L. R. A. 1917D, 967, it was allowing a fire escape to remain in an unsafe condition. In both cases it was held that the corporation was not liable for the negligence alleged. And, as supporting the rule that a charitable corporation is not liable for the negligence of its managers as distinguished from that of its minor employees, see the recent cases of Kidd v. Massachusetts Homeopathic Hospital 237 Mass. 500, 130 N. E. 55, approving Roosen v. Peter Bent Brigham Hospital, supra; John Quincy Adams v. University Hospital, 122 Mo. App. 675, 99 S. W. 453; and Emery v. Jewish Hospital Ass'n, 193 Ky. 400, 236 S. W. 577.

After careful consideration of the briefs and arguments of counsel, and the authorities upon which they rely, we are of opinion, for the reasons stated, that verdict was properly directed for defendant; and the judgment thereon is accordingly affirmed.

Affirmed.