# Richmond

NORFOLK PROTESTANT HOSPITAL v. ELIZABETH M. PLUNKETT.

March 22, 1934.

Present, Campbell, C. J., and Holt, Epes, Gregory and Chinn, JJ.

The opinion states the case.

*Venable, Miller, Pilcher & Parsons* and *James Mann,* for the plaintiff in error.

*Williams, Loyall & Taylor,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This action was brought by Mrs. Elizabeth M. Plunkett against Norfolk Protestant Hospital, a charitable institution, to recover damages for alleged injuries resulting from the maltreatment of plaintiff while she was a pay patient in the hospital. There was a verdict and judgment for the plaintiff in the sum of $1,500.

This writ of error challenges the action of the trial court in entering judgment for the plaintiff, on the following grounds: (a) That improper evidence was admitted; (b) that the court refused to strike out plaintiff's evidence; (c) that the court gave erroneous instructions offered by the plaintiff; (d) and that the court refused to set aside the verdict and enter judgment for the defendant.

With the exception of the assignment relating to the improper admission of evidence, the remaining assignments are so interrelated that it only becomes necessary to consider them with reference to the questions of law

involved and the sufficiency of the evidence to sustain the verdict.

The much discussed question of the liability of a charitable hospital for negligent acts of its servants has been settled in Virginia by the decision of this court in *Weston's Adm'x* v. *Hospital of St. Vincent, etc.,* 131 Va. 587, 107 S. E. 785, 23 A. L. R. 907. After an exhaustive review of the many cases dealing with the question, Judge Burks held that the only duty which a charitable hospital owed to its patients was the exercise of due care in the selection and retention of its servants.

The case of the plaintiff must necessarily rest upon the rebuttal of the implied assurance that defendant has exercised due care in the selection and retention of the nurse charged in the declaration as being responsible for plaintiff's injuries, and by preponderant evidence of the negligence.

The case of the plaintiff may be thus summarized: Mrs. Plunkett, a woman thirty-three years of age, went to the hospital for a repair operation due to lacerations incurred in child-birth. She was admitted to the hospital as a patient of her personal physician, Dr. Hargrave, who had prescribed a certain treatment for her in preparation for an operation. Upon her arrival Mrs. Plunkett was assigned a room which was under the supervision of the floor nurse, Miss Hudson. The wash bowl in the room was dirty; cigarette stubs were lying around; there were no light bulbs in the sockets, no towels were convenient, and the bed was untidy. She complained to Miss Hudson of the condition of the room but without getting results, and only after complaining to the supervisor did she get the room in orderly condition. Mrs. Plunkett remained in the hospital eighteen days. During that period she was visited by Miss Brickhouse, the superintendent, only once, and by Dr. Pope, the interne, one time. As a part of the treatment prescribed, plaintiff was to receive a vaginal douche containing one-sixteenth per cent of zonite. On the afternoon of the day plaintiff was to leave

the hospital and was dressed and ready to depart with her husband, Miss Hudson, who, as stated, was the head nurse, came into the room and said to plaintiff: "My goodness, you didn't have your douche this morning. I forgot to have the nurse give you your douche this morning." Succeeding events were described by plaintiff as follows:

"I took off my coat suit, which I had on over my gown, and got back on the bed, and she rang the bell, and when Miss Harwood came after she rang the bell she said: 'Harwood, we forgot to give Mrs. Plunkett her douche this morning. We will have to give it to her quick. She is ready to go off," and Miss Harwood came with it, to give me the douche and when she started to give me the douche I told her that it burned, and Miss Hudson said 'It burnt you before didn't it?' and I said 'Yes,' and she said 'It is absolutely Dr. Hargrave's orders. Go ahead and shove it in, Harwood.' Miss Harwood carried out the order, and immediately I was writhing in pain, and of course there was a great deal of excitement, and I screamed, and Mr. Plunkett came into the room and then they called Dr. Pope, the interne, who was in charge of that floor. It was his duty to attend to the patients on that hall, and he came in, and he was smoking, and when he came in the room he went over to the bowl and just threw his cigarette in the bowl, and came over, without washing his hands, and gives me a vaginal examination. I did not know where I had been injured, but he put his hand in where this operation had been, and it was very unpleasant to have the examination at that time.

"Q. You say that he made the examination of you with his hand?

"A. Yes.

"Q. In other words, he put his hand in you?

"A. He did.

"Q. Now, Mrs. Plunkett, when this douche was being given what was the attitude of Miss Hudson and Miss Harwood with respect to being in a hurry?

"A. They were going off duty. Miss Hudson had been in the room talking to me as I was getting ready to leave, and was telling about the various things that they were going to do off duty, and she told Miss Harwood to hurry, that it was four o'clock 'and we want to get away.'"

And again:

"It was not a catheter like that. It was a hard rubber douche tip. It is hard.

"Q. Approximately how big was it?

"A. Well, I would say it was about that big, about as big as that fountain pen there, hard rubber.

"Q. Hard rubber about the size of that fountain pen?

"A. Yes.

"Q. Did the young lady have the bag on a stand or did she hold it in her hand?

"A. She had it in her hand. Miss Harwood had never given me a douche before. This was the first time she had given me a douche, I only had one other.

"Q. Was, or was not Miss Hudson directing and telling her what to do?

"A. She was.

"Q. Were they, or did they appear in a hurry to give you this douche at this time?

"A. Yes, it was almost time for the nurses to go off duty, and they were very anxious to leave, and Miss Hudson told Miss Harwood to 'hurry up, Harwood, it is time for us to go off.'"

The evidence further shows that the catheter was improperly inserted into the urethra, permitting the fluid to enter the bladder; that hemorrhages immediately followed; that plaintiff suffered intense pain; that she was under daily treatment by Dr. Hargrave for a period of time.

Due to the death of Dr. Hargrave prior to the trial we are deprived of his evidence.

■ From the above statement of facts there can be no question that the jury was justified in reaching the conclusion that the negligence of defendant was the proxi-

mate cause of plaintiff's injuries. Was the defendant negligent in its selection and retention of Miss Hudson? In our opinion the jury was warranted in answering the question in the affirmative.

Miss Brickhouse testified that in selecting a nurse one of the requirements was that the applicant should have had three years of high school work and that she did not know where Miss Hudson was educated. The evidence shows that Miss Hudson never attained high school; that she had only attained the tenth grade in a graded school situated in a small town; that during three years in the hospital she had been repeatedly reprimanded for infractions of the rules of the hospital; that she stayed out late at night in violation of the rules; that she was threatened with dismissal and only retained because Miss Brickhouse felt sorry for her.

It is not sufficient to say that a nurse is competent simply because she is capable of discharging the manual duties incumbent upon her as a nurse. It is a matter of common knowledge that the welfare of a patient is as much the responsibility of the nurse as it is of the physician. If she is lacking in educational preparation, if she is guilty of indiscretions that impair her physical or mental status, if she is lacking in that moral character which imbues the patient with confidence, then it cannot be said that she is a competent person to be placed in charge of a helpless patient.

The jury has found that the defendant was negligent in the selection and retention of the nurse and that finding has received the approval of an eminent trial judge.

We think the evidence tends to support the verdict; that the action of the trial court in admitting the evidence in regard to the condition of the room, and in giving and refusing instructions was without error, and, therefore, that the judgment should be affirmed.

*Affirmed.*

EPES, J., dissenting.