# 𝔖taunton

ALICE HILL v. LEIGH MEMORIAL HOSPITAL, INCORPORATED, ET AL.

September 11, 1963.

Record No. 5606.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, l'Anson and Carrico, JJ.

The opinion states the case.

*Louis B. Fine* and *Henry M. Schwan* (*Fine, Fine, Legum & Schwan,* on brief), for the plaintiff in error.

*Jack E. Greer* and *William T. Prince* (*Williams, Cocke, Worrell & Kelly,* on brief), for the defendants in error.

CARRICO, J., delivered the opinion of the court.

Alice Hill, while a patient in the Leigh Memorial Hospital in Norfolk, fell and fractured her right arm. She filed a motion for judgment against the hospital corporation and three of the hospital's nurses, Dorothy Harmon, Margaret Parke and Sarah Brown, seeking to recover damages for her injury.

In her motion for judgment, the plaintiff alleged that the nurses were negligent while she was a patient in the hospital and that the hospital was negligent in the breach of its corporate duty to use due care in the selection and retention of its employees. The defendants, in their grounds of defense, denied that they were negligent in these respects.

The plaintiff also alleged in her motion for judgment that the hospital was negligent in the breach of certain other corporate duties, the crucial basis of which was that she had been furnished "improper, unsafe and faulty instruments and appliances for her care and use." She claimed that because there were no protective side rails on her bed she fell from the bed and sustained her injury.

The hospital filed a motion to strike these latter allegations from the motion for judgment on the ground that the hospital was a charitable institution and, as such, was not liable to the plaintiff for the breach of corporate duties other than the duty to use due care in the selection and retention of its employees.

The trial court granted the hospital's motion, struck the disputed allegations from the motion for judgment, and directed that the case be tried against the hospital only for its alleged negligence in the selection and retention of employees and against the nurses for their alleged negligence.

A jury trial was had on the remaining issues. At the conclusion of the plaintiff's case, the trial court granted the defendants' motion to strike the plaintiff's evidence and entered final judgment for the defendants. We granted the plaintiff a writ of error.

There is no dispute that the hospital is a charitable institution. Also, the plaintiff conceded in the trial court that the hospital was immune from liability for the negligent acts of its employees, unless the hospital was negligent in their selection and retention. She does not now contend that the hospital was negligent in this latter respect.

The plaintiff's contention is that it was the hospital's duty to supply and use proper equipment for her use and treatment; that this duty was corporate or administrative because it was non-delegable or non-assignable, and that the failure to perform this duty was the negli-

gence of the hospital itself for which it is not immune from liability. She also contends that her evidence was sufficient to show that the nurses were negligent in their treatment of her. We are, therefore, presented these questions for determination:

1. Was the plaintiff entitled to maintain her action against the hospital for its corporate negligence because it allegedly furnished improper equipment for her care and use, that is, a bed without side rails?

2. Was the plaintiff's evidence of negligence against the nurses sufficient to present a jury question?

These questions will be discussed in the order listed.

■ The question of the tort liability of a charitable institution, and especially of a charitable hospital, has been of perplexing difficulty in this and our sister states for many years. Balanced against the usual judicial interest in providing relief to an aggrieved party has been the deep concern of the courts that the charity, founded and fostered as it is through the highest motivations of public spirit, would be thwarted in its work if laid open to unrestricted litigation.

To preserve the charity, both in its funds and in its purposes, there evolved, by judicial declaration, the principle of immunity from liability of charitable institutions for negligence. Various grounds were advanced for the efficacy of this principle. Some courts embraced the trust fund theory—that to permit recovery would be to violate the terms of the gifts to the charity. Others held the charity to be performing, in reality, a governmental function and, therefore, immune. Some adopted a theory of implied waiver, or assent to immunity by the beneficiary of the charity. Still others based their decisions on broad grounds of public policy. 10 Am. Jur., Charities, §§ 144 to 148, pp. 691 to 698.

Some jurisdictions, from the outset, rejected the principle of immunity. Others gave it only limited application. In some instances, where originally complete immunity had been provided, later decisions restricted its scope or abandoned the principle completely.

Many courts adopted the rule that the charity was not liable for the negligent acts of its employees. It was held in some cases, however, that the charity was charged with certain corporate or administrative duties which it could not delegate or assign to employees, for the breach of which the charity should be held liable. The ground for these holdings was that such duties involved the actual governing of the charity itself. The breach of these duties was classified as

corporate negligence, or the negligence of the officers or managing directors of the charitable corporation, as distinguished from the negligence of subordinate employees. Immunity was withheld for corporate negligence in instances where the charity failed to use due care in the selection and retention of employees, in the promulgation and enforcement of .reasonable rules and regulations for the conduct of the routine affairs of the charity, in providing safe premises and in supplying and using proper equipment. See Ann. 25 A. L. R. 2d 29.

In Virginia, the problem, as related to· charitable hospitals, was first considered in *Hospital of St. Vincent* v. *Thompson,* 116 Va. 101, 81 S. E. 13, where the plaintiff, an invitee on the hospital premises, was injured when she fell down an elevator shaft. The Court recognized the existence of the principle of immunity, saying, "It may . . . . be conceded that by the weight of authority a beneficiary of the charity cannot hold the association responsible for negligent injuries, but the basis upon which the immunity is made to rest differs widely in the adjudicated cases." 116 Va., at p. 105. The trust fund doctrine, as a basis for immunity, was criticized. The immunity was held, however, not to extend to a stranger to the charity, and the judgment in favor of the plaintiff was affirmed.

The question was next before this Court in *Weston's Adm'x* v. *St. Vincent, Etc.,* 131 Va. 587, 107 S. E. 785, 23 A. L. R. 907, where an action was brought to recover damages for the wrongful death of an infant who was burned by a hot water bottle. Again, the principle of immunity was recognized when Judge Burks wrote:

". . . That they [charities] should be exempt from liability to those who accept their benefits appears to be the opinion of nearly all of the courts of this country to which the question has been propounded, though they differ as to the reasoning by which the conclusion has been reached. 131 Va., at p. 601. . . . . .

". . .[W]e believe that the correct basis of the exemption is public policy. . . ." 131 Va., at p. 609.

Recovery was denied the plaintiff on the ground that the hospital was not liable for the negligence of its nurse in treating the infant, in the absence of a showing that the hospital was negligent in the selection and retention of the nurse.

We next dealt with the problem in *Norfolk Prot. Hospital* v. *Plunkett,* 162 Va. 151, 173 S. E. 363, where we upheld a recovery by the plaintiff against the charitable hospital for damages resulting from

the negligence of a nurse who, as the evidence showed, had been negligently selected and retained by the hospital. Of significant interest is a statement in that opinion which is of assistance here:

"The much discussed question of the liability of a charitable hospital for negligent acts of its servants has been settled in Virginia by the decision of this court in *Weston's Adm'x* v. *Hospital of St. Vincent, Etc.*, 131 Va. 587, 107 S. E. 785, 23 A. L. R. 907. After an exhaustive review of the many cases dealing with the question, Judge Burks held that *the only duty which a charitable hospital owed to its patients was the exercise of due care in the selection and retention of its servants*." 162 Va., at p. 153. [Emphasis added].

Finally, the question was before us in *Memorial Hospital* v. *Oakes, Adm'x,* 200 Va. 878, 108 S. E. 2d 388. There we reversed a judgment in favor of the plaintiff whose decedent had met his death when the oxygen tent in which he was placed caught fire. We held that the hospital was a charitable institution and immune from liability for the negligence of its employees. It is worthy of note that a reading of the opinion, record and briefs in that case shows that the real basis of the complaint against the hospital was that the plaintiff's decedent was furnished a defective oxygen tent. The plaintiff there contended, in her brief, that the hospital was liable, under the doctrine of *res ipsa loquitur*, because the tent was under the hospital's exclusive control and, "the jury could have inferred that defendant, or its servants, had been negligent in either the installation, maintenance or operation of the oxygen tent." Under the theory of the plaintiff in the present case, this would constitute corporate negligence.

The *Oakes* case has been considered to have decided that the liability of a charitable hospital, to its patients, is limited to a single form of corporate negligence, that of selection and retention of unfit personnel. See Note, 49 Va. Law Review 622, footnote 90, pp. 634, 635.

In the *Oakes* case, the cases of *Bodenheimer* v. *Confederate Memorial Ass'n,* 68 F. 2d 507, and *Ettlinger* v. *Trustees of Randolph-Macon College,* 31 F. 2d 869, are cited and an excerpt from the *Ettlinger* opinion is quoted. These cases, decided by the Fourth Circuit Court of Appeals, enunciate the rule that charitable institutions are immune from liability for acts of corporate negligence.

The plaintiff in the *Oakes* case urged us to abrogate the immunity doctrine, contending that, ". . . public policy demands that such a

hospital be liable for *its torts* and those of its employees." 200 Va., at p. 886 [Emphasis added]. Mr. Justice Snead, speaking for the court, said, "If it be considered desirable to abolish such immunity, it would be more appropriate for the General Assembly to act . . ." 200 Va., at p. 889.

But the General Assembly did not deem it appropriate to act in this respect. At the 1962 session, a bill (House Bill No. 145) was introduced which would have permitted a paying patient in a private charitable hospital to maintain an action for personal injuries against the hospital for the negligence of any employee thereof. Several amendments were added which are not of concern here. The House defeated the measure by a vote of 51 to 31. Journal of the House of Delegates (1962), pp. 825, 826.

It is of crucial importance to note that the proposed bill, had it been enacted, would have permitted recovery, for a paying patient, against a private charitable hospital for the negligence of *any* employee, without regard to whether such employee was involved in the performance of corporate or administrative duties, or merely in the conduct of its routine affairs. Thus, in refusing to act to provide for recovery in either situation, the General Assembly has tacitly recognized the immunity of such a hospital from liability for corporate negligence, as well as for the negligence of subordinate employees.

What we are here asked to do is to abrogate a rule which is an accepted part of the law of this Commonwealth. We should hold the charitable hospital liable for its corporate negligence, the plaintiff argues, because "[t]he tide [of decisions elsewhere] has been toward the broadening of liability, and the elimination of immunity. Had this caused catastrophic financial impact on charitable hospitals, surely the marked trend would be in the other direction. It is inconceivable that charitable hospitals operating in Virginia from all sources of revenue & grants could not afford liability insurance coverage in addition to that presently maintained."

We are not unmindful that the trend of decisions in other jurisdictions has been to eliminate, or at least to limit, the principle of immunity. We resist that trend now, just as we did in 1959, in the *Oakes* case. Whether the elimination of immunity would cause "catastrophic financial impact on charitable hospitals" we are not prepared to say. It is entirely conceivable that such would be the result. And whether such hospitals can afford to procure liability insurance to protect themselves from unrestricted litigation, if the

immunity is removed, should not be of concern to this Court as a basis for a decision affecting important substantive rights.

We base our decision, as we did in the *Weston* case in 1921, on the ground of public policy. It cannot be debated that the care of the sick and injured is a public purpose, a matter of public concern. When a portion of the responsibility therefor is borne by the gifts of the philanthropic-minded, so much of the burden is removed from the public. If a portion of those gifts is diverted to the payment of tort claims, without restriction, the spirit and intent of the gifts are, at once, nullified and that much of the burden is again cast upon the public.

This effect upon the charitable funds, and upon the community, is the same whether the diversion results from the payment of damages for a corporate wrong, or for the negligent act of some subordinate employee, of the charitable hospital. As long as those who administer the funds use due care in selecting and retaining those who do the daily work of the charity, the funds should remain inviolate against the claim of a beneficiary.

We conclude, therefore, that in Virginia a charitable hospital has, as to its patients, an immunity from liability for negligence, unless it has failed to use due care in the selection and retention of its employees.

We now turn to the question of whether the plaintiff's evidence was sufficient to present a jury question as to the negligence of the nurses. The full details of how the plaintiff sustained her injury to her arm are not essential to the determination of this question and, in the interest of brevity, will not be set out.

Suffice to say that the plaintiff did not know how she sustained her injury, other than that she awoke during her second night in the hospital and found herself on the floor, suffering from pain in her arm. She testified that there were no side rails on her bed. Her doctor, testifying in her behalf, said that she told him that, "she was confused and she got out of bed and she wanted to get up," and that, "she was standing at the side of the bed" when she fell.

The crucial point in the determination of this question is that the only showing of the nurses' connection with the plaintiff was that they, "assisted the corporate defendant in looking after the plaintiff in her then illness," and that the plaintiff was under their care or professional observation, in some way not disclosed, at and before the time she had her fall.

This showing fell far short of carrying the plaintiff's burden of proof. It did not disclose what duties, if any, the nurses were required to perform for the plaintiff and whether, as a part of such duties, they, or any of them, had either the authority or the responsibility to place side rails on her bed. It did not disclose what kind of nurses these defendants were—whether registered nurses, practical nurses, student nurses or nurses aides and, hence, what degree of care would be imposed upon them in the performance of their duties in the hospital. Thus, the plaintiff failed, as a matter of law, to establish the existence or breach of any duty owing by the nurses to her with respect to bed rails.

Had this question been presented to the jury, it could only have speculated as to the nurses' negligence. Under these circumstances, the trial court was plainly right in striking the plaintiff's evidence against these defendants.

We find no error in the judgment of which the plaintiff complains. Accordingly, it will be

*Affirmed.*