**Pamela Lynne RADOSEVIC, Plaintiff,**

v.

**VIRGINIA INTERMONT COLLEGE,
et al, Defendants.**

Civ. A. No. 85–0247–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

April 17, 1986.

Wendal D. Jackson, Bristol, Tenn., J.D. Bowie, S. Gray Robinson, Bristol, Va., for plaintiff.

George M. Warren, Jr., Bristol, Va., Phillip Anderson, James R. Austin, T. Daniel Frith, Roanoke, Va., William W. Eskridge, Abingdon, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

Plaintiff, a resident of Alaska, brought suit in the District Court of Alaska against defendants, all residents of Virginia, for injuries she sustained on the campus of Virginia Intermont College on April 15, 1985 when a roof access hatch cover blew off during stormy weather. On motion by defendants, pursuant to 28 U.S.C. § 1404(a), the case was transferred to the Western District of Virginia wherein venue and jurisdiction were proper, 28 U.S.C. § 1332. The case is now before the court on Virginia Intermont's motion for summary judgment, pursuant to Fed.R.Civ.P. 56, on grounds that the college is an institution immune from tort liability under the doctrine of charitable immunity.

Defendant, Virginia Intermont College, contends that there are no genuine issues of material fact in the action against Virginia Intermont and that the only remaining question is one of law: whether or not Virginia Intermont College is a charitable institution immune from tort liability. Defendant contends that under the laws of the Commonwealth of Virginia and according to cases before the Fourth Circuit Court of Appeals in which the doctrine of charitable immunity was applied, it is immune as a charitable institution from liability for injuries sustained by one who is a beneficiary of the institution.

Plaintiff primarily relies as support for denying defendants' motion on a Virginia Supreme Court case, *Purcell v. Mary Washington Hospital*, 217 Va. 776, 232 S.E.2d 902 (1977) and on a Virginia Circuit Court case, *Costello v. University of Richmond*, No. LG–1720 (Rich.Cir.Ct., (Jan. 31, 1985)). In both cases the courts denied the institutions the benefit of charitable immunity defense on grounds that neither was a charitable institution. Plaintiff further contends that the defense of charitable immunity is inapplicable in this suit because Virginia Intermont carries liability insurance, has contracted to indemnify the other defendants in this suit, is an elitist operation, and generates income and profits.

Defendant maintains that liability insurance coverage is irrelevant to a determination of the availability of the charitable immunity defense to tort liability and that the indemnification agreements have no bearing on the application of the charitable immunity doctrine as to beneficiaries of the charity.

The issue before the court is a narrow one: whether Virginia Intermont College is a charitable institution and, therefore, able to assert the defense of charitable immunity in an action brought by one of its stu-

dents.[1]  Because this cause of action arose in Virginia, the court is constrained to apply the substantive laws of the Commonwealth of Virginia.

■  The doctrine of charitable immunity continues to be recognized in Virginia to the extent that the beneficiaries of charitable or eleemosynary organizations cannot bring negligence actions against such organizations absent specific allegations of negligence in the hiring of employees.[2]  The Fourth Circuit Court of Appeals has recognized the limited nature of the doctrine of charitable immunity in Virginia.  *Egerton v. R.E. Lee Memorial Church*, 395 F.2d 381, 382 (4th Cir.1968).[3]  Virginia holds this doctrine to rest on public policy; the general belief that the public as a whole benefits if charitable organizations are free from tort liability for injuries sustained by beneficiaries.  In *Ettlinger v. Trustees of Randolph-Macon College*, 31 F.2d 869, 873 (4th Cir.1929), the court enunciated the rule that charitable institutions are immune from liability for acts of corporate negligence.  In fervid dicta, the court adhered to the principle that it is better for one (the injured party-beneficiary) to suffer than to deprive the public of the benefit of the charity.  Hence, public policy provides the grounds for extending immunity from tort liability to charitable institutions in Virginia.

The courts applying Virginia law prior to 1974 made no distinction among the various organizations which asserted the doctrine of charitable immunity but commonly used a two-part test to determine whether an institution or organization was charitable, and thus, qualified to assert the doctrine of immunity from tort liability.  The test was first stated in *Danville Com. Hosp. v. Thompson*, 186 Va. 746, 43 S.E. 882 (1947), a case in which plaintiff sued for injuries sustained at the time she was born in defendant hospital.  The court stated that:

> [T]he test which determines whether a hospital is charitable or otherwise is its *purpose*, that is, whether or not it is maintained for gain, profit or advantage ... and the question as to its *character* may be determined not only from the *powers and purposes as defined in its articles of incorporation or charter* but also from the *manner in which it is conducted.*

186 Va. at 753, 43 S.E.2d 882.  (Emphasis added).  *Accord, Memorial Hosp. v. Oakes, Adm'x*, 200 Va. 878, 883, 108 S.E.2d 388, 392 (1959).

Thus a two-part test has evolved in which the (1) charter is examined for the stated purpose, and (2) the character of the actual operation of an institution is analyzed.

The Virginia Supreme Court has addressed the issue of charitable immunity in *Purcell v. Mary Washington Hosp.*, 217 Va. 776, 232 S.E.2d 902 (1977).  The court determined that there was a "lack of a charter limitation of a charitable or eleemosynary character" and that the hospital had been operated over a long period of time in a manner calculated to produce a profit or gain."  *Purcell*, 217 Va. at 781,

---

**1.**  In the determination of the status of Virginia Intermont College, the court is mindful of the characterization of the institution for tax purposes.  However, the fact that V.I. may be exempt from federal and state taxation is not dispositive of the issue of the college's status in the present litigation.  It is highly unlikely that the standards used by the taxing authorities to classify an organization as being tax exempt are interchangeable with those applied by the courts in determining immunity from tort liability for organizations.  The public policy behind tax liability and tort liability is inherently dissimilar; therefore, the standards applied in imposing liability in each body of law cannot be interchanged.

**2.**  *Hill v. Leigh Memorial Hosp., Inc.*, 204 Va. 501, 132 S.E.2d 411 (1963), citing: *Hospital of St.*

*Vincent v. Thompson*, 116 Va. 101, 81 S.E. 13 (1914); *Weston's Adm'x v. Hospital of St. Vincent*, 131 Va. 587, 107 S.E. 785 (1921); *Norfolk Protestant Hosp. v. Plunkett*, 162 Va. 151, 173 S.E. 363 (1934); *Memorial Hospital v. Oakes*, 200 Va. 878, 108 S.E.2d 388 (1959).  *Roanoke Hospital Assoc. v. Hayes*, 204 Va. 703, 133 S.E.2d 559 (1963).

**3.**  The court at note 2 lists Virginia Supreme Court cases recognizing that charitable associations are exempt from tort liability to one who qualifies as a beneficiary of its bounty, and at note 4 lists cases renouncing any intention of abandoning the rule of limited immunity for charitable associations, absent legislative action.

232 S.E.2d 902. In determining whether the hospital in *Purcell* was charitable and thus entitled to be insulated from tort liability to a beneficiary, the court relied on the charter and character test as applied in *Thompson* and *Oakes* as follows:

In *Thompson,* that court applied the purpose and character test and determined that because the hospital was (1) privately owned; (2) issued stock to investing stockholders; (3) managed and governed by agents selected by the stockholders; (4) charged patients for medical care; and (5) collected those charges when it could, it was not a charitable institution.

The court in *Oakes* first looked to the charter and found that its purpose was not to make a profit, but to operate so as to pay its own expenses if able; surplus revenue was to be devoted to charitable work. The court found that the manner of the hospital's operation bolstered its status as a charitable institution because (1) no commissions were paid to officers or directors; (2) no individual or firm received return from its operation; (3) no federal or state taxes were paid; (4) the goal for its operation was to break even after depreciation; (5) it was liberal in debt collection activities; and (6) it had operated at a loss for the last five years.

Relying on the above analysis the court in *Purcell* found that under the charter, the hospital was a privately owned corporation that was able to issue stock but chose not to, that dividends on the stock were prohibited, that voluntary dissolution of the corporation was governed by Virginia Code provisions, that, although no salaries were paid to members, officers and directors, the charter did not prohibit the paying of salaries. The court also found that charges were calculated to be set at an amount above the break-even point, that even medically indigent patients were charged, that the hospital pursued aggressive debt collection activities, and that the hospital had operated at a profit or gain for 20 of the 21 preceding years.

The Virginia General Assembly in 1974 prospectively eliminated the doctrine of charitable immunity for most hospitals. The present code provision, § 8.01–38 Va. Code (1950), allows only those hospitals which render exclusively charitable medical services free of charge to patients to invoke the doctrine of charitable immunity to tort liability. The court in *Purcell,* however, was not able to apply that code section because the cause of action accrued in 1971. Even before the General Assembly changed the law, the Virginia Supreme Court had noted that the trend in other jurisdictions was to eliminate the doctrine for those institutions claiming to be charitable. In *Hill v. Leigh Memorial Hosp., Inc.,* which was decided before the General Assembly legislatively abrogated the doctrine of charitable immunity, the court resisted the trend to abrogate the doctrine and specifically based its decision on the ground of public policy. The court reasoned that:

> It cannot be debated that the care of the sick and injured is a public purpose, a matter of public concern. When a portion of the responsibility therefor is borne by the gifts of the philanthropic-minded, so much of the burden is removed from the public. If a portion of those gifts is diverted to the payment of tort claims, without restriction, the spirit and intent of the gifts are, at once, nullified and that much of the burden is again cast upon the public.

*Hill,* 204 Va. at 507, 132 S.E.2d 411.[4]

Public policy was clearly the grounds upon which the Fourth Circuit in 1929 in *Ettlinger v. Trustees of Randolph-Macon College,* based its decision. Public policy, however, is not immutable; rather it changes to reflect the sentiments and morals of society. As so aptly put by the district court in *Green v. Connally,* 330 F.Supp. 1150 (1971), "[c]hanges in the

---

**4.** In *Hill* there was no dispute that the hospital was a charitable institution; one of the issues was whether a charitable hospital has, as to its patients, an immunity from liability for negligence if it failed to use due care in the selection and retention of its employees.

courts' conceptions of what is charitable are wrought by changes in moral and ethical precepts generally held, or by changes in relative values assigned to different and sometimes competing and even conflicting interests of society." *Id.* at 1159.

Very recently a circuit court in Virginia found that the University of Richmond was not a charitable institution and not immune from tort liability in an action brought by an injured student.[5] Although not controlling on this court, the case does shed light on what Virginia courts believe public policy in Virginia to favor. Unlike *Ettlinger*, the court in *Costello* took into account the presence of liability insurance.[6] The court apparently believed that it would not be against public policy to allow a student of the university to sue for damages for injuries sustained on campus in light of the university's liability insurance coverage.

In the case *sub judice*, defendant college[7] was incorporated on June 20, 1902. The charter states that the institution was established for the instruction of youth, and provides further that the corporation has the power to "take, receive, own, hold, administer, distribute and dispose of property of all kinds ...," and to "sell, mortgage, or hypothecate such property and administer the proceeds in any way not inconsistent with the purposes of the corporation or the law of the land." The charter vests all powers in a Board of Trustees whose members are chosen in part from nomination by the Baptist General Association of Virginia. Virginia Intermont is a non-stock, non-profit private institution. Dissolutions governed by Virginia law. See § 13.1–907 Va.Code (1950). Members of the Board of Trustees do not receive compensation for their services; however, the officers of the college do receive salaries. Nothing in the current charter limits,

restricts, or requires the college to conduct its affairs as a religious, benevolent, charitable or eleemosynary institution. (Poulton affidavit, Exhibit 1.)

The record shows that the college receives contributions from the Baptist General Association and from other charitable sources for use in the maintenance and operation of the college and to help defray the educational costs for students. A large portion of the school's student loans and scholarships come from these charitable sources. The college also receives financial assistance from the federal and state governments in the form of student loans. Money is received directly by the school to be made available to qualifying students. (Poulton deposition, pp. 75–76). The college itself gives tuition discounts to 100 students for $50.00 to $1,000.00. Every student who attends Virginia Intermont pays tuition, whether out of each student's own pocket or with the help of federal or state loans or Virginia Intermont's tuition installment loan program. (Poulton deposition, p. 69). The record shows that Virginia Intermont has filed numerous suits to collect student debts. Students also pay for their rooms, meals and books. Students are permitted to attend school concerts, lectures and seminars free of charge. The general public is allowed to attend the lectures and seminars free of charge but must pay for concerts and plays. (Poulton deposition, p. 78).

The record contains financial information compiled by Virginia Intermont's accountants. Virginia Intermont has shown a profit in 9 of the last 15 years, provided that the large capital expenditures are left out of that calculation. The vice president of financial affairs for the college opined that it would be impossible for "Virginia

5. *Costello v. University of Richmond,* LG–1720 (Jan. 31, 1985). The judge relied on *Thompson, Oakes,* and *Purcell* and adopted the reasoning in plaintiff's brief which applied the factors in those cases to the particular facts in *Costello.*

6. Liability insurance was also considered in *Hill v. Leigh Memorial Hosp.,* but the court found that substantive rights were not affected by the

ability of a hospital to bear the potential costs of liability insurance. 204 Va. at 507, 132 S.E.2d 411.

7. The charter was amended in 1922 to change the name of the corporation to Virginia Intermont College from Virginia Institute. It was amended again, May 22, 1974.

Intermont to operate and provide the level of services and the education it provides, at the present tuition level, in the absence of charitable contributions. (Adair deposition, pp. 154, 170). Mr. Adair also stated that tuition was set to achieve a buffer of revenue over and above anticipated expenses. (Adair deposition, p. 121).

It is the opinion of the court that strong emphasis on the management of Virginia Intermont's finances and whether it made profits or was operating from a deficit is not dispositive of the corporation's status as a charitable institution. Virginia Intermont was not limited by its charter to operate a charitable institution; it does not provide any student with a free education. Neither the presence of liability insurance coverage carried by Virginia Intermont nor its tax-exempt status is dispositive of the status as a charitable institution for tort liability purposes. These are incidents of the operations of the college and attach only after someone makes a determination as to the character of the college for the particular purpose. It is the opinion of the court that for tort liability purposes, characterizations of the college as a charitable or non-charitable institution for various purposes are not binding on our determination of Virginia Intermont's status. Those prior characterizations are to be considered along with the factors used by the courts addressing the issue of charitable immunity.

■ The court finds that Virginia Intermont is not entitled to use the defense of charitable immunity from tort liability. Relying on the factors employed in *Purcell, Thompson* and *Oakes,* the court finds that the charter does not specifically restrict operation of the college to charitable operation of the college to charitable or eleemosynary purposes nor is the manner of operation of the college strictly charitable in nature. Therefore, Virginia Intermont College is not a charitable institution under the standards used by the courts in Virginia. The court also finds that the public policy in Virginia favors a more restrictive approach to determining that an institution is immune from tort liability on the grounds of the charitable immunity doctrine. This is evidenced by the legislative abrogation of the doctrine of charitable immunity for hospitals and the judicial reluctance to automatically apply a charitable label to various institutions.

Accordingly, defendants' motion for summary judgment is denied and the parties are directed to proceed to trial on the issue of liability for injuries sustained by plaintiff in an Order to be entered this day.