## CIRCUIT COURT OF SMYTH COUNTY

Bender

v.

Association for Research
and Enlightenment, Inc., et al.

October 31, 1997

Case No. (Law) 96-5191

BY JUDGE CHARLES H. SMITH, JR.

This matter is before the court for decision on the defendant's special plea of charitable immunity and for summary judgment on behalf of the individual defendant. The court held a hearing on the motions on September 25, 1997. I have reviewed the briefs submitted on behalf of the defendants and authorities cited by the plaintiff at the hearing and considered all of same in light of counsel's arguments. In consideration of all of which, the court finds as follows.

The plaintiff filed this law suit on July 17, 1996, seeking damages for personal injuries allegedly sustained as a result of a fall taken on defendant's property. The plaintiff alleges she was attending a camp operated by the corporate defendants on land leased from the individual defendant during the week of July 25, 1994. The plaintiff fell from a deck or porch connected to a building where she was attending a meeting. She alleges the defendants were negligent in failing to enclose the deck or porch with proper railings and in failing to warn her of this dangerous condition. There is no question that at the time of the injury complained of, the plaintiff was attending a camp operated by the defendants and, as such, was a direct beneficiary of the program. The question is whether the corporate defendants are charitable institutions

organized and operated not-for-profit. It should be noted that the court dismissed the claim against the individual defendant at the hearing.

The defendants contend that they, indeed, are charitable institutions and are organized and operated as non-profit organizations. The defendants contend the plaintiff joined the defendant, Association for Research and Enlightenment, Inc. (ARE), for the purpose of deriving the benefits of their various programs, literature, readings, etc. Indeed, the plaintiff apparently filed admissions to the effect that at the time of her injury, she was on leave from work for depression and was attending the ARE program entitled "Healing Self, Healing Others, Healing the World." This, the defendants contend, is one of the stated purposes for which they are organized. Thus, the plaintiff being a direct beneficiary of one of the programs operated by these charitable institutions at the time of her injury, the defendants allege, cloaks them with the defense of charitable immunity.

The public policy of the Commonwealth recognizes the substantial public benefit derived by granting immunity from tort liability to organizations and institutions that are purely and truly charitable or eleemosynary in purpose and in operation. The rationale for this doctrine was well articulated in the case of *Memorial Hospital v. Oakes*, 200 Va. 878 (1959).

> A policy of the law which prevents him who accepts the benefit of a charity from suing it for the torts of its agents and servants, and thus taking for his private use the funds which have been given for the benefit of humanity, which shields gifts made to charity from the hungry maw of litigation and conserves them for purposes of the highest importance to the state, carries on its face its own justification, and, without the aid of metaphysical reasoning, commends itself to the wisdom of mankind … .

The question of whether or not an organization or institution is charitable in purpose and in operation is a legal question to be determined by the court. The cases have evolved a two-part test to be utilized by the courts in making this determination. First, the court should look to the stated purposes of the entity as contained in its charter, articles of incorporation, by-laws, or other organizational papers. Second, the court should analyze the actual manner of operation of same over the years. It is not enough that the entity have itself chartered as charitable if it does not operate as such. (Query: How many legs does a sheep have if you call a tail a leg? Response: Four; calling a tail a leg does not make it one.)

The defendants went to great lengths with their evidence and exhibits to establish their charitable purposes and operation. Exhibit 1 for the defendants, admitted at the hearing, contains numerous documents in support of their position. The documents reveal that ARE was originally incorporated in 1931. It was organized as a non-stock, not-for-profit organization. The Foundation was initially chartered in 1948. Both have had their articles of incorporation amended over the years. Both are non-stock. The original and amended articles of incorporation of ARE state the purposes for which the corporation was organized to be:

> To conduct and carry on psychic and scientific research, including physical, educational, psychic and social investigations and to conduct medical research, general hospital work, establish hospitals, schools and sanatoriums for consultations with reference to suggestions for the cure of, psychic treatment of and psychic study of disease of any and all kinds, and for medical and surgical aid, treatment and care of persons sick, deformed or suffering from bodily injuries; to assist and train suitable persons as nurses for the sick, and to conduct departments of the said corporation in research and study, aid and conduct of hospitals, camps, physical training schools, mechanical laboratories and plants, lectures, schools, publications, history and archeology, investigation of psychic phenomena, the giving and interpretation of psychic readings, philosophical study; to study or engage in community welfare work, conduct of study groups and classes for economic development, physical, medical and social clinics, libraries, endowments, charity and study courses ... .

In 1983 the Foundation amended its articles to provide that its purpose was to "carry out the purposes of ARE ... ." Both entities have had their articles amended over the years to comply with IRS regulations to qualify as tax exempt organizations. It is clear that the organizational documents of ARE and the Foundation explicitly restrict their operations to charitable and benevolent purposes and prohibit them from operation for private gain. The other documents contained in defendant's Exhibit 1 — tax returns, financial reports, activities summary — tend to support this position as well. There are several references in defendant's articles of incorporation to their benevolent and philanthropic purposes and to the use and application of fees, donations, gifts, etc., to advance and support their purposes. They strictly prohibit the use of same for private gain.

The testimony of Delores Sloan, Corporate Secretary for ARE and the Foundation, was enlightening on the character of the operation of the two. She testified that the financial operation of the corporation was strictly not-for-profit; that there were no stockholders and no large staff of high paid executives; that while the operation was mostly marginal, profits, if any, were used to further improve or expand their services or physical facilities. She indicated that scholarships were available on a need basis for any of their programs or services and that they had no aggressive debt collection policy.

The plaintiff really made no argument that the defendants had not borne the burden on the first prong of the test for charitable immunity, i.e., that the charters and organizational papers of the two defendants establish their purpose as being purely charitable. The plaintiff, instead, seemed to concentrate on the character of the actual operation of the corporations. The plaintiff cross-examined Ms. Sloan closely in this regard. She also introduced numerous exhibits consisting of pamphlets, brochures, and advertisements of the defendants for their various programs, seminars, camps, literature, membership, etc., with accompanying fees and expenses.

The plaintiff did not call any witnesses to support her allegations, and the exhibits fall short of establishing operation of these entities as other than charitable. A thorough cross-examination of Ms. Sloan by plaintiff's counsel failed to elicit any significant evidence of operation other than as charitable and not-for-profit.

The plaintiff also relied heavily upon the case of *Radosevic v. Virginia Intermont College*, 633 F. Supp. 1084 (W.D. Va. 1986). This was a federal district court case in which the district judge denied the defense of charitable immunity to the college because their charter did not restrict the operation of the college to strictly charitable purposes and since the manner of operation of the college was not strictly charitable in nature.

That is not the case here. Unlike the Virginia Intermont charter, the charters of ARE and the Foundation explicitly restrict their operation to charitable purposes. The testimony of Ms. Sloan and her supporting exhibits were sufficient in the court's opinion to establish their charitable purposes and operation. Thus, the court will sustain the special plea of charitable immunity of these two defendants.