BURGIE, APPELLANT, *v.* MUENCH ET AL., TRUSTEES, APPELLEES.

(Decided February 26, 1940.)

*Messrs. Fraser, Effler, Shumaker & Winn,* for appellant.

*Messrs. Holloway, Peppers & Romanoff,* for appellees.

CARPENTER, J. On the afternoon of November 4, 1937, the plaintiff fell in the basement of the First Evangelical Reformed Zion's Church of Toledo, hereinafter called the church, and sustained serious injuries and damages for which she brought this action against the defendants as trustees of the church, which is an unincorporated Christian religious society.

In the trial court the verdict of the jury was for the plaintiff, but that court granted defendants' motion for judgment notwithstanding the verdict and entered final judgment for them from which this appeal on questions of law was taken. The granting of this motion is the error urged.

On the issue of liability, there is little dispute as to the material facts. The church is the usual type of evangelical church society, conducting worship services and having various auxiliary groups or organizations, among which is a ladies aid society. Its functions, as usual, are to aid the church financially and furnish social and spiritual fellowship to the women affiliated with it. Such affiliation does not depend upon membership in the church or upon payment of dues or other contributions to it, although most members do

pay dues, 15 cents per month, and make other voluntary contributions. Formerly, the plaintiff, who was seventy-seven years old when she fell, was a member of the church; she was married in it and her eight children were baptized in it. About fifteen years ago she left it and joined the church of another denomination, but has attended it occasionally and retained some connections with the ladies aid society, to which she paid some dues and made contributions when she attended, and was listed as a member on the roll kept by the society.

One of the customs of that society was to hold birthday parties every three months. The hostesses on such occasions were those of its members whose birthday anniversaries came within the preceding three months. The plaintiff usually attended two or three meetings a year, including the one following her birthday, which in 1937 was held November 4th. That day the ladies had 'lunch and a social period in the basement of the church and then all attended the funeral of a member of the society at a nearby mortuary. After the funeral they returned to the church to hold the devotional and business session of the society. At this time the plaintiff, in seeking the ladies' rest room, walked through the door to the boiler room, the floor of which was three steps down, and she fell and sustained the injury and damages complained of.

The door to the boiler room is at the end of a hallway which is about four and a half feet wide and twelve feet or more long. From the dining room it is entered through swinging doors on one side; the door to the boiler room is at the end, ten or twelve feet to the right, and that to the ladies' rest room is on the opposite side of the hallway and between three and four feet from the boiler room door. At the time in question the door into the boiler room was open and held back against the wall by a brick placed there by the church janitor. In this hallway there are one or

more electric lights, which were kept lighted by the janitor when there were people in the church. He testified they were lighted that day when he left to go to the funeral. They were out when plaintiff fell. The evidence does not show by whom they were put out. There is some dispute as to whether daylight from windows in the boiler room furnished any illumination in the hallway and at the boiler room door. Plaintiff testified it was dark. On direct examination she was asked:

"Q. You could not see where you were? A. No, it was all dark. I didn't see very well."

On cross-examination, speaking about her entering the church from the funeral, she testified:

"Q. And you crossed the banquet room, did you? A. Yes.

"Q. And then where did you go? A. I wanted to go to the ladies' rest room.

"Q. Yes, but where did you go from the banquet room? A. That was in the same place you see where I walked around, and I thought because I wasn't very acquainted down there and I didn't know where the ladies' rest room was, it was the same side and I thought I walked toward it, and you see there was no light. If there would have been a light I would have known where I was going, but you see there was no light and when I come I walked right on and there was no door, and I fell."

On these facts the judgment of the trial court must be sustained on two of the three issues pleaded as defenses:

1. It is undisputed that the church is a charitable institution not for profit. Under the law of Ohio, if plaintiff was a beneficiary of the charity she cannot recover from the charitable trust for damages resulting from the negligence of its agents or servants, it not being pleaded or proven that there was negligence on the part of the church in the selection or employment

of its agents or servants. *Taylor, Admr.,* v. *Protestant Hospital Assn.,* 85 Ohio St., 90, 96 N. E., 1089, 39 L. R. A. (N. S.), 427; *Taylor* v. *Flower Deaconess Home and Hospital,* 104 Ohio St., 61, 135 N. E., 287, 23 A. L. R., 900; *Rudy* v. *Lakeside Hospital,* 115 Ohio St., 539, 155 N. E., 126; *Sisters of Charity of Cincinnati* v. *Duvelius,* 123 Ohio St., 52, 173 N. E., 737; *Lakeside Hospital* v. *Kovar, Admr.,* 131 Ohio St., 333, 2 N. E. (2d), 857; *Waddell, a Minor,* v. *Y. W. C. A.,* 133 Ohio St., 601, 15 N. E. (2d), 140.

The *Protestant Hospital Assn. case* and the *Duvelius case* were cited and followed in support of this rule by this court in *Walsh* v. *Sisters of Charity,* 47 Ohio App., 228, 191 N. E., 791. Whatever the law may be in other states, on the ground of public policy, these cases settle it for Ohio.

The real question in this case is whether plaintiff was a beneficiary of the charity. The ladies aid society was an integral part of the church organization, its functions being both to aid the church materially, and, in the fellowship it afforded to its members and those who participated in its activities, to minister to their social and spiritual life. Charitable benefits are not limited to aid to the needy, or to relief of physical suffering, or to providing intellectual or physical culture, but in their finest sense may flow from spiritual development. To spiritually minded individuals, as the evidence indicates the plaintiff was, such development results from the association of kindredly minded friends joining in social and devotional exercises and in cooperation to aid a common, altruistic cause such as the church. To such persons, giving brings more benefit, more satisfaction, than receiving. The plaintiff, by her participation in this branch of the life of the church, was as much a beneficiary of its charity— of the trust it represented—as is a patient in a hospital or a person in the swimming pool of a Y. W. C. A.

Whether she was a member or a guest of the society, she was there that day to share in its exercises. She was not a stranger to it as was the working nurse in *Sisters of Charity* v. *Duvelius, supra,* or as was the man on the highway in *Pflugfelder* v. *Convent of the Good Shepherd,* 55 Ohio App., 158, 9 N. E. (2d), 4.

Such being her relationship to the charitable trust, the church, she cannot have satisfaction for her damages from the property of the trust.

2. There is serious question whether there is any evidence tending to prove negligence on the part of the defendants, but it is not necessary to decide that question because, in addition to the decision on the issue as to the charitable trust, the contributory negligence of the plaintiff bars her recovery.

She said she "wasn't very acquainted down there and I didn't know where the ladies' rest room was" and "it was all dark. I didn't see very well." Notwithstanding this, she went searching in the dark for a place the location of which she did not know. As was said in the third paragraph of the syllabus of *Flury* v. *Central Publishing House of Reformed Church,* 118 Ohio St., 154, 160 N. E., 679, "she stepped into such total darkness, to his [her] injury, without any knowledge, information or investigation as to what such darkness might conceal, raises an inference of negligence on his [her] part which, in the absence of any evidence tending to refute such inference, will require a directed verdict for the defendant." *McKinley* v. *Niederst,* 118 Ohio St., 334, 160 N. E., 850; *E. Kahn's Sons Co.* v. *Ellswick,* 122 Ohio St., 576, 172 N. E., 668.

From the plaintiff's own testimony there is no alternative but the conclusion that her continued advance in the dark took her to the fall. There can be no supposition that any innocent act like opening the door, as in *Painesville Utopia Theatre Co.* v. *Lautermilch,* 118 Ohio St., 167, 160 N. E., 683, caused the fall.

Finding no error in the judgment of the trial court, it is affirmed.

*Judgment affirmed.*

OVERMYER and LLOYD, JJ., concur.