Margaret Pickford EGERTON, Appellant,

v.

R. E. LEE MEMORIAL CHURCH, an un-
incorporated association, Appellee.

No. 11873.

United States Court of Appeals
Fourth Circuit.

Argued March 6, 1968.

Decided May 22, 1968.

Willis P. Whichard and E. K. Powe,
Durham, N. C. (Powe, Porter & Alphin,
Durham, N. C., and William Rosenberger,
Jr., Lynchburg, Va., on brief), for appel-
lant.

Floyd C. Jennings, Jr., Lynchburg, Va.
(Howard W. Rhodes, Jr., and Rhodes &
Jennings, Lynchburg, Va., on brief), for
appellee.

Before HAYNSWORTH, Chief Judge,
WINTER, Circuit Judge, and RUSSELL,
District Judge.

DONALD RUSSELL, District Judge:

This appeal challenges a motion to dis-
miss granted the defendant in an action
to recover for injuries sustained by the
plaintiff while in the sanctuary of the
defendant Church. The District Court
rested its decision on the conclusion that,
by reason of its non-profit charitable
character as a religious institution, the
defendant was immune under the control-
ling state law from liability in tort to one
who, like the plaintiff, was the benefi-
ciary of its charitable purposes. We af-
firm.

The defendant Church is an unincorpo-
rated religious society or association,
eleemosynary in character and not oper-
ated for profit, located in Lexington, Vir-
ginia, in the Protestant Episcopal Dio-
cese of Southwestern Virginia, and de-
pendent for support on the contributions

of its members. Incident to its religious purposes, it maintains a sanctuary, which, in addition to its use for services on Sunday, is open daily to the public at reasonable hours. While not maintained as a tourist attraction, the local tourist center in Lexington in its tourist guidebook has identified the Church sanctuary, and particularly its stained glass windows, one of which was installed upside down, as a place of local historic interest and significance. The plaintiff, a citizen of North Carolina, while visiting in Lexington, entered the defendant's sanctuary during daylight hours for the purpose of viewing the sanctuary and its stained glass windows. The sanctuary was unlighted save for the sunlight refracted through the stained glass windows. While so visiting, the plaintiff fell into an open stairway, receiving the injuries for which recovery is sought in this action.

■■ It is conceded that, since jurisdiction rests on diversity of citizenship, the law of Virginia is determinative of the rights of the parties.[1] While refusing to extend to charities an absolute or "total" immunity, repeated decisions of the Supreme Court of Virginia have affirmed that charitable associations in that State are exempt in tort from liability to one who qualifies as a beneficiary of its bounty.[2] This principle of limited immunity finds its warrant in public policy, as forcefully phrased by Judge Parker in Ettlinger v. Trustees of Randolph-Macon College (C.C.A.Va., 1929) 31 F.2d 869, 872:

"But, resting upon public policy, the rule rests upon a sufficiently firm foundation. A policy of the law which prevents him who accepts the benefit of a charity from suing it for the torts of its agents and servants, and thus taking for his private use the funds which have been given for the benefit of humanity, which shields gifts made to charity from 'the hungry maw of litigation' and conserves them for purposes of the highest importance to the state, carries on its face its own justification, and, without the aid of metaphysical reasoning, commends itself to the wisdom of mankind."

Though, in recent years, many jurisdictions, formerly adhering to a rule of either absolute or limited immunity, have abandoned such rule,[3] the Supreme Court of Virginia has firmly renounced any intention of so abandoning its rule of limited immunity for charitable associations, absent legislative action.[4]

It is the position of the plaintiff, however, that a church, devoted as it is to the advancement of religion, is not such a charity as qualifies for this limited immunity in tort under the Virginia rule.

1. Hinman v. Berkman (D.C.Mo., 1949) 85 F.Supp. 2, 3; Note, 25 A.L.R.2d 55.

2. Hospital of St. Vincent of Paul v. Thompson (1914) 116 Va. 101, 81 S.E. 13, 14–18, 51 L.R.A.,N.S., 1025; Weston's Adm'x v. Hospital of St. Vincent of Paul (1921) 131 Va. 587, 107 S.E. 785, 792–793, 23 A.L.R. 907; Memorial Hospital, Inc. v. Oakes (1959) 200 Va. 878, 108 S.E.2d 388, 396; Hill v. Leigh Memorial Hospital, Incorporated (1963) 204 Va. 501, 132 S.E.2d 411, 415; Roanoke Hospital Association v. Hayes (1963) 204 Va. 703, 133 S.E.2d 559, 562, 1 A.L.R.3d 1026; Ettlinger v. Trustees of Randolph-Macon College (C.C.A.Va., 1929) 31 F.2d 869, 871; Bodenheimer v. Confederate Memorial Assn. (C.C.A.Va. 1934) 68 F.2d 507, 509, cert. denied 292 U.S. 629, 54 S.Ct. 643, 78 L.Ed. 1483. This principle does not, however, cover injuries sustained by reason of negligence by the charity in selecting and retaining incompetent servants. Norfolk Protestant Hospital v. Plunkett (1934) 162 Va. 151, 173 S.E. 363; Roanoke Hospital Association v. Hayes, supra.

3. Cases illustrative of this trend are collected in 25 A.L.R.2d at pp. 43–44. A large number of articles in law journals advocate the abandonment of the immunity rule; many of these are listed in 25 A.L.R.2d at p. 42.

4. Hill v. Leigh Memorial Hospital, Inc., supra (132 S.E.2d, at p. 415); Memorial Hospital, Inc. v. Oakes, supra (108 S.E. 2d at p. 396). See, to the same effect, Foley v. Wesson Memorial Hospital (1923) 246 Mass. 363, 141 N.E. 113; and DeGroot v. Edison Institute (1943) 306 Mich. 339, 10 N.W.2d 907, 909.

To support such position, she relies on this statement in the opinion of the Trial Court in Rohr v. The City of Richmond and Waddill et als., Trustees of the First Baptist Church of Richmond (1914) 20 Va.Law Reg. 260:

"It is further insisted by counsel for the First Baptist Church that a church cannot be sued in tort. While it has been so held in many jurisdictions, it would seem from recent decisions that the doctrine of total immunity from liability of religious societies for tort has, upon reason and authority, been rejected. Horden v. Salvation Army, 139 Am.State Rep. 889 (892), and note thereto, especially on Page 905. See, also, Bruce v. Central M. E. Church, 11 Am. & Eng.Ann.Cases 150."

The District Court construed the quoted expression in the opinion in the *Rohr* Case (which incidentally was unnecessary to the Court's basic decision) not as a marking out of a church as an exception to the general rule of immunity applicable to charities generally, but to mean that, like charitable institutions generally, a church does not enjoy "total immunity * * * in tort", its immunity being limited to torts committed against beneficiaries of its bounty. This conclusion finds compelling support in the two cases cited in the *Rohr* opinion: Neither of those cases made any distinction between a church and other types of charitable associations; both cases, as attested by their citation to this effect in Hospital of St. Vincent of Paul v. Thompson (1914) 116 Va. 101, 81 S.E. 13, 51 L.R.A.,N.S., 1025, were formulating a rule applicable, without distinction, to all charitable associations.[5] After all, "No object is more clearly charitable, in the sense of the law" than a church "established for the promotion of religion and morality".[6] It is illogical to assume that such a "charitable" object is to be denied the same measure of immunity in tort accorded other charities. In our opinion, the District Court has correctly interpreted the law of Virginia as investing churches with an immunity similar to that given charities generally.

■ Finally, the plaintiff argues that she was a stranger to the defendant's charitable bounty, participating in no way in the religious purposes of the defendant's sanctuary but viewing it solely as an historic monument. Accordingly, she asserts she was without the Virginia rule which accords immunity to a charitable institution.

Such argument would confine the church function and the purposes of its various services, especially that of its sanctuary, within too narrow a range.[7] The church does not limit its services to a single day during the week or to a single type of services. It seeks to provide a house of worship and reverence, which day in and day out will foster in the minds of all who visit its sanctuary or take part in its services religious devotion and morality. It does this in the devotional services it has in such sanctuary; it does it in the music programs which it includes in its devotional services; it does it, too, in the very form, adornment and embellishment of its sanctuary. These physical embellishments of its sanctuary are not irrelevant

5. In fact, Bruce v. Central Methodist Episcopal Church (1907) 147 Mich. 230, 110 N.W. 951, 10 L.R.A.,N.S., 74, is direct authority for the proposition that no distinction can be made between a church and other charities. Thus, the Court said (110 N.W. at p. 952):

"We cannot hold that the property of a hospital is a charitable trust fund and that the property of a church is not a charitable trust fund, unless we hold that funds devoted to a religious purpose are not charitable trust funds. The foregoing reasoning and authorities prevent our so holding. On the contrary, we are compelled to hold that funds devoted to a religious purpose are charitable trust funds."

6. Glaser v. Congregation Kehillath Israel (1928), 263 Mass. 435, 161 N.E. 619, 620.

7. Bianchi v. South Park Presbyterian Church (1939) 123 N.J.L. 325, 8 A.2d 567, 124 A.L.R. 808, 813.

to the religious purposes of the church. The church sanctuary, its stained glass windows, its altar and other accoutrements are not just architectural or aesthetic creations; they are all designed to produce an atmosphere and background conducive to religious devotion and meditation. Were it not thought that such installations contributed to a general spiritual atmosphere and a worshipful environment, there would be no point in erecting churches of aesthetic character, with stained windows depicting sacred scenes and with imposing altars. The experience of individuals over the centuries are witnesses that these structures with their many aesthetic features of a spiritual character do aid in the religious purposes of the congregation. When one thus visits a church's sanctuary to admire its religious adornments and fixtures, she is partaking in a feature or part of its spiritual function and service. She is, to that extent, a beneficiary of its bounty; her action is related to the religious purposes of the church. It is a matter of no moment that she is not a member of the congregation itself.[8] Nor does she become a stranger to the religious purposes of the sanctuary and its various features simply because she asserts she visited it as a tourist any more than her attendance at the devotional services of the church under similar circumstances would make her a stranger to their spiritual character. As a beneficiary of the defendant's benevolence and bounty, the plaintiff is barred from any right of recovery on account of her injuries against the defendant.

It may be noted, as the District Court in its well-reasoned opinion observed, that, if it be assumed that the church maintained an historic shrine, which the plaintiff was visiting at the time of her injuries, the same rule of immunity would be applicable.[9]

Affirmed.

WINTER, Circuit Judge (dissenting):

I agree that the Supreme Court of Appeals of Virginia would hold that churches are charitable associations which are exempt from tort liability to persons who qualify as beneficiaries of their bounty. I disagree, under the facts pleaded in this case, which, because of its summary disposition, must, for present purposes, be taken as true in the light most favorable to plaintiff, that plaintiff was a beneficiary of defendant's bounty.

Plaintiff, a citizen of another state, pleaded that she entered the church building "which was then open to the public, for the purpose of viewing the sanctuary and the stained glass windows in the church; that one of the stained glass windows in the church had been installed upside down and thereafter maintained in this condition by the defendant until the present time for the purpose of attracting visitors, such as plaintiff, inside the church building." There was a further allegation that defendant held the church out to be of historical interest and significance and permitted information concerning the same to be disseminated by the Lexington, Virginia, Visitor's Information Center.

In an affidavit in response, defendant pleaded the eleemosynary nature of the church, stating, *inter alia*, that it is a religious society and that when plaintiff entered the church no religious service was being conducted nor was one scheduled. It was alleged that the church performed its function in part for the benefit of students and faculty of Washington & Lee University and Virginia Military Institute, but that "[I]t [the church] *is not maintained as a tourist attraction, but is for the religious use and benefit of its members and other people of the community, including students and faculty, as aforesaid.*" (emphasis added)

With the district judge, my brothers find that plaintiff partook of religious

---

8. Bianchi v. South Park Presbyterian Church, supra; Burgie v. Muench (1940) 65 Ohio App. 176, 29 N.E.2d 439, 441.

9. Bodenheimer v. Confederate Memorial Ass'n., supra.

devotion and morality by viewing the physical embellishments of the sanctuary, including the upside down window, and, therefore, brought herself within the mainstream of the church's spiritual function and service so as to become a beneficiary of its charity. With the district judge, they also venture the dictum that if the church were maintained as an historical shrine, the same rule of immunity would be applicable.

I cannot read plaintiff's complaint as alleging that she visited the church for any religious purpose. Affording the allegations of the complaint the liberality to which they are entitled, I would read them as saying that plaintiff went to the church to view an historic site and the accoutrements of that site, including the upside down window and other objects of religious art. While the result of plaintiff's visit may have been to satisfy her aesthetic or historical curiosity, or to widen her aesthetic or historical knowledge, or to realize aesthetic enjoyment, she has nowhere pleaded any religious motive for her visit, nor is such a motive inferable. One who views religious art no more necessarily contributes to his spirituality, morality or religiousness than one who views depictions of battle scenes necessarily contributes to his proclivity to violence. Since the church disavows that its purpose is to maintain a tourist attraction and says that its sole purpose is for the religious use and benefit of its members and other people *of the community*, I would hold that the pleadings do not establish that plaintiff was a beneficiary of the church's bounty.

Bianchi v. South Park Presbyterian Church, 123 N.J.L. 325, 8 A.2d 567, 124 A.L.R. 808 (1930), is not in point. There it was concluded that maintenance of a social center where a girl scout troop was permitted to meet was a purpose of the church, albeit incidental to its original purpose; here the purpose of the church was, by the admission of its rector, more

strictly limited. In view of defendant's characterization of its purposes, the dictum is unnecessary and academic.

I would reverse and remand for an evidentiary determination.