472

# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Mark A. Shull
and Nadine C. Shull,
Administrators and
Personal Representatives
of the Estate of
Samuel Shull,
deceased

v.

Caroline Furnace
Lutheran Camp
and Retreat Center,
Inc., et al.

June 14, 2004

Case No. (Law) 03-110

BY JUDGE EDWARD L. HOGSHIRE

Plaintiffs Mark A. Shull and Nadine C. Shull, as administrators and personal representatives of the estate of Samuel Shull, filed a motion for judgment against defendants Caroline Furnace Lutheran Camp and Retreat Center, Inc., its predecessor in interest, Caroline Furnace Lutheran Camp, Inc. (collectively, "Caroline Furnace"), and Virginia Synod of the Evangelical Lutheran Church in America ("Virginia Synod") for events surrounding the death of their son, Samuel Shull. The motion for judgment alleged negligence and breach of contract against Caroline Furnace and vicarious liability under *respondeat superior* on both counts against Virginia Synod. Plaintiffs prayed for $1.5 million in compensatory and $350,000 in punitive damages.

Caroline Furnace and Virginia Synod each demurred and filed Special Pleas of Charitable Immunity. Virginia Synod also filed a motion to transfer venue. Virginia Synod appeared on its demurrer and its motion to transfer venue on December 5, 2003. The Court overruled Virginia Synod's demurrer and determined that venue was proper. On March 9, 2004, a hearing was held on the Special Pleas of Charitable Immunity of Caroline Furnace and Virginia Synod. After consideration of the parties' briefs and evidence presented at hearing, the Court concludes that the Special Pleas of Charitable Immunity of both defendants should be sustained.[1] The Court's reasoning follows.

## Statement of Facts

The facts of this case are not disputed. Virginia Synod is a North Carolina non-profit organization doing business in Virginia as an arm of the Lutheran Church. (Virginia Synod Exs. 2, 3.) The Internal Revenue Service has determined Virginia Synod to be a § 501(c)(3) exempt organization for the purposes of income taxation. (Virginia Synod Ex. 9.) Virginia Synod's Articles of Incorporation indicate it was "organized and shall be operated exclusively for religious purposes" and its members will not make pecuniary gain from its operation. (Virginia Synod Ex. 3.) Excepting salaries and administrative overhead, all of Virginia Synod's income goes toward the promotion of religious activities and other charitable and educational ends. (Virginia Synod Ex. 7.) Caroline Furnace is a recipient of Virginia Synod's donations; in 2001, Virginia Synod donated $17,800 to Caroline Furnace. (Virginia Synod Ex. 8.)

Caroline Furnace Lutheran Camp, Inc., a Virginia corporation, was originally formed by Virginia Synod for the purposes of holding title to camp property in Shenandoah County, Virginia. (Pls. Ex. 3.) In 1987, Virginia Synod transferred the property to Caroline Furnace, and it is currently operated by Caroline Furnace as a summer camp and retreat center. *Id.* Caroline Furnace's Articles of Incorporation do not limit the organization to charitable or eleemosynary purposes, nor do they state that Caroline Furnace is a not-for-profit entity, (Caroline Furnace Exs. B, D.) The Articles state that Caroline Furnace's purposes are to further "an intentional Christian ministry through the outdoor ministry experience. ... To encourage further spiritual renewal for the whole person by providing ... experience of the environment ... and development of relationships."

---

[1] This letter opinion does not impact the breach of contract claim filed as Count II of plaintiffs' motion for judgment.

(Caroline Furnace Ex. B.) Its bylaws classify it as a "non-profit agency," and the executive director has stated that any profits accrued from its operation would be reinvested to further Caroline Furnace's stated purposes. (Caroline Furnace Ex. D; Hr'g Tr. 22, 24.) Despite financial support from the Lutheran synods, including Virginia Synod, in the amount of about $25,000 per year, Caroline Furnace has posted a net loss over the past five years. (Pls. Ex. 5.) Four year-round employees, two full-time and two part-time, are supplemented with a summer camp staff. (Hr'g Tr. 11-12.) With the exception of clergy and members of the church, Caroline Furnace charges a fee for use of the property and facilities. (Hr'g Tr. 32.) Caroline Furnace was widely available to groups of all types, and has hosted Lutheran groups as well as Methodists, Episcopalians, Mennonites and a Jewish group. (Hr'g Tr. 9.) The Internal Revenue Service has granted Caroline Furnace an exemption from paying income taxes under § 501(c)(3) of the Internal Revenue Code. (Caroline Furnace Ex. E.)

The "? Kids" provide home-schooled children with a "wholesome, Christian environment in which to meet other homeschoolers, socialize, serve the community, develop friendships, and have fun." (Caroline Furnace Ex. A.) The "? Kids" arranged to attend Caroline Furnace during the weekend of June 8-10, 2001. (Pls. Ex. 4.) Samuel Shull was a member of the "? Kids" and made the trip to Caroline Furnace. On June 9, Samuel and other children went swimming in the Camp's man-made lake. Samuel drowned, and was transported by helicopter to the University of Virginia Medical Center in Charlottesville. He died on June 10 from asphyxia secondary to drowning. (Stipulation of parties.)

## Issue

Whether Caroline Furnace and Virginia Synod are entitled to charitable immunity as a bar to the recovery sought in this case.

## Analysis

### A. *Overview*

Virginia's doctrine of charitable immunity insulates charitable organizations from liability for tort claims made by their beneficiaries. Each of the defendants in this case has made a Special Plea of Charitable Immunity, contending that it is entitled to charitable immunity because it is a charitable organization and because Samuel Shull was a beneficiary of its charity. Plaintiffs argue that Caroline Furnace is not a charitable

organization and, even if it is, Samuel Shull was not a beneficiary of its charitable purpose at the time of the incident that led to his death. Plaintiffs also argue that although Virginia Synod is a charitable organization, Samuel Shull was not a beneficiary of Virginia Synod's charitable purpose. Plaintiffs allege an agency relationship between Virginia Synod and Caroline Furnace which gives rise to liability of Virginia Synod under *respondeat superior*. Regardless of whether an agency relationship existed, if both organizations are entitled to charitable immunity, neither may be held liable for negligence.

## B. *Charitable Immunity of Caroline Furnace*

Virginia has long recognized the doctrine of charitable immunity, which grants charitable organizations limited immunity from liability for torts committed against their beneficiaries. *See, e.g., Moore v. Warren*, 250 Va. 421 (1995); *Danville Cmty. Hosp. v. Thompson*, 186 Va. 746 (1947); *Weston's Adm'x v. Hospital of St. Vincent*, 131 Va. 587 (1921); *Egerton v. R. E. Lee Mem'l Church*, 395 F.2d 381 (4th Cir. 1968) (applying Virginia law).

In order to determine whether an organization qualifies for charitable immunity, it must meet two requirements. First, it must show that it exists and operates as a charitable organization. *Davidson v. Colonial Williamsburg Found.*, 817 F. Supp. 611, 613 (E.D. Va. 1993) (applying Virginia law). Second, it must show that the tort victim was a beneficiary of the charitable activities of the organization at the time of the incident giving rise to the claim. *Id.*

To meet the first prong of the test, "(1) the charter is examined for the stated purpose, and (2) the character of the actual operation of an institution is analyzed." *Radosevic v. Virginia Intermont Coll.*, 633 F. Supp. 1084, 1086 (W.D. Va. 1986) (applying Virginia law) (noting that the test was first used in *Danville Cmty. Hosp.*, 186 Va. 746). Judge Payne's opinion in *Davidson* elaborates on the two-part test used in *Radosevic* by noting that the court must conduct a fact-sensitive inquiry into the following factors:

(1) whether the organization's charter limits it to charitable or eleemosynary purposes; (2) whether the organization's charter contains a "not for profit" limitation; (3) whether the organization's goal is to break even; (4) whether the organization earned a profit; (5) whether any profit or surplus must be used for charitable or eleemosynary purposes; (6) whether the organization depends on

contributions and donations for its existence; (7) whether the organization provides its services free of charge to those unable to pay; and (8) whether the directors and officers receive compensation. This list of factors is illustrative, not exhaustive, and no one factor is dispositive.

*Id.* at 614 (citations omitted).

Considering the factors in turn, (1) Caroline Furnace's Articles of Incorporation do not contain a limitation to charitable or eleemosynary purposes, but do state that the purposes are to further "an intentional Christian ministry through the outdoor ministry experience. ... To encourage further spiritual renewal for the whole person by providing ... experience of the environment ... and development of relationships." (Caroline Furnace Ex. B.) (2) Caroline Furnace's Articles of Incorporation do not explicitly state that it operates as a not-for-profit entity, but its bylaws classify it as a "non-profit agency." (Caroline Furnace Exs. B, D.) (3) The executive director testified, "[W]e're not trying to make a profit. We're just trying to get from year to year and continue to maintain the facilities and/or improve them and expand programmatic possibilities." (Hr'g Tr. 24.) (4) Financial data indicates that Caroline Furnace has seen a five-year net loss with yearly fluctuations in the bottom line. (Pls. Ex. 5.) Caroline Furnace lost over $30,000 in fiscal 2001, the year of the incident giving rise to this case. *Id.* (5) The executive director testified that any profits that the camp may accumulate would be reinvested in facilities, programming, and staffing. (Hr'g Tr. 22.) (6) Caroline Furnace depends on financial support from the Lutheran synods in amounts of about $25,000 per year. (Pls. Ex. 5.) (7) According to the executive director, only clergy and members of the church are eligible to attend Caroline Furnace free of charge; all others are required to pay a fee for use of the property. (Hr'g Tr. 32.) Simply because Samuel Shull and the "? Kids" were required to pay a fee to attend does not make immunity unavailable. *See, e.g., Bodenheimer v. Confederate Mem'l Ass'n*, 68 F.2d 507 (4th Cir. 1934), *cert. denied*, 292 U.S. 629 (1934) (museum admission); *Ettlinger v. Trustees of Randolph-Macon Coll.*, 31 F.2d 869 (4th Cir. 1929) (college tuition); *Sink v. Vinton Wesleyan Church*, 50 Va. Cir. 361 (1999) (church hall rental fee); *Boan v. Peninsula Y.M.C.A.*; *Smith v. Peninsula Y.M.C.A.*, 18 Va. Cir. 145 (1989) (consolidated for decision) (Y.M.C.A. visitor fee). Caroline Furnace was widely available to groups of all types, and has hosted Lutherans as well as Methodists, Episcopalians, Mennonites and a Jewish group. (Hr'g Tr. 9.) (8) The Board retains the

discretion to set levels of compensation for the Executive Director (Caroline Furnace Ex. D); the staff is composed of two full-time employees, two part-time employees, and seasonal camp staff. (Hr'g Tr. 11-12.)

Finally, the Internal Revenue Service has granted Caroline Furnace an exemption from paying income taxes under § 501(c)(3) of the Internal Revenue Code. (Caroline Furnace Ex. E); *see* 26 U.S.C. § 501(c)(3) (2004); *Radosevic*, 633 F. Supp. at 1086, n. 1, 1089 (holding tax exempt status a factor, but not dispositive of charitable status). Although none of these factors are wholly determinative when considered individually, together they clearly indicate that Caroline Furnace exists as a charitable organization and is thus entitled to immunity from torts against its charitable beneficiaries. *Cf. Bailey v. Lancaster Ruritan Recreational Ctr.*, 256 Va. 221 (1998) (applying test and concluding that recreation center did not exist and operate as a charitable organization and therefore was not entitled to immunity).

Although Caroline Furnace exists and operates as a charitable organization, it will not be insulated from liability unless Samuel Shull was a beneficiary of the "charitable bounty." *Thrasher v. Winand*, 239 Va. 338, 340 (1990) (citing *Weston's Adm'x*, 131 Va. at 601); *Roberts v. Wesley Found.*, 27 Va. Cir. 121, 126 (1992). Torts against strangers or invitees who have no beneficial relationship to the charitable organization are outside the scope of immunity. *Straley v. Urbanna Chamber of Commerce*, 243 Va. 32 (1992); *Thrasher*, 239 Va. at 340-41; *Memorial Hosp. v. Oakes*, 200 Va. 878 (1959).

Some Virginia circuit courts have held that an individual attending a recreational camp is a direct beneficiary of the program. *Bender v. Association for Research & Enlightenment*, 50 Va. Cir. 554 (1997); *accord Boan*, 18 Va. Cir. 145. The United States Fourth Circuit Court of Appeals, applying Virginia law, has deemed an individual a beneficiary even when the primary motivation for her visit diverged from the primary purpose of the charitable organization. *Egerton*, 395 F.2d 381. In *Egerton*, the plaintiff was injured while visiting a church solely to view its architecture, not to attend religious services. The court nonetheless found that she was a beneficiary because she visited to "partak[e] in a feature or part of its spiritual function and service." *Id.* at 384.

Here, the "? Kids" traveled to Caroline Furnace to further their own purpose of socializing, serving the community, and having fun in a wholesome Christian environment. (Caroline Furnace Ex. A.) While Caroline Furnace offers its facilities to individuals of all faiths, its charitable purpose is to provide an outdoor setting for Christians to experience the environment and develop relationships. (Hr'g Trans. 9; Caroline Furnace

Ex. B.) The reasons that Samuel Shull and the "? Kids" traveled to Caroline Furnace are precisely the reasons that Caroline Furnace operates. As in *Egerton*, Samuel Shull was not participating in a religious service organized by Caroline Furnace, but was nonetheless enjoying the benefits of Caroline Furnace's outdoor setting and fellowship with the "? Kids."

The fact that individuals pay a fee does not bar a determination that they are beneficiaries of a charitable organization. *Ettlinger*, 31 F.2d 869 (college tuition); *Bodenheimer*, 68 F.2d 507 (museum admission); *Sink*, 50 Va. Cir. 361 (church hall rental fee); *Boan*, 18 Va. Cir. 145 (Y.M.C.A. visitor fee). The "? Kids" paid a fee in order to join a class of beneficiaries entitled to receive Caroline Furnace's charity. A non-paying guest (a clergy member, for example) would be an equal member of that class. The fact of payment is thus immaterial to the determination of beneficiary status.

Plaintiffs have advanced the argument that Samuel Shull was not a beneficiary while swimming because no ministry was taking place at that precise time. This is too narrow an interpretation of the charitable immunity doctrine. Those "? Kids" who chose to swim were enjoying both nature and each other's company, consistent with the charitable goals of Caroline Furnace. The fact that no Christian education was actively taking place during that time does not remove Samuel Shull from the class of beneficiaries. *See Egerton* at 384 (Plaintiff does not "become a stranger to the religious purposes of the sanctuary and its various features simply because she asserts she visited it as a tourist any more than her attendance at the devotional services of the church ... would make her a stranger to their spiritual character."). Each member of the "? Kids" was a continuous beneficiary of Caroline Furnace as long as the trip lasted and the group was on the premises because the goals of the group's trip and the charitable goals of the camp were so closely linked.

For the reasons discussed above, the Court holds that Caroline Furnace exists and operates as a charitable organization and that Samuel Shull was a beneficiary of that charitable activity. The doctrine of charitable immunity protects Caroline Furnace from liability.

## C. *Charitable Immunity of Virginia Synod*

Plaintiffs allege that Virginia Synod is vicariously liable for torts committed by Caroline Furnace under the doctrine of *respondeat superior* because an agency relationship existed between the defendants. If both the alleged principal and the alleged agent are insulated from liability, however, plaintiffs may not recover from either defendant regardless of whether an

agency relationship actually existed. The factors set out in Section B *supra* determine whether Virginia Synod, standing alone, is entitled to charitable immunity.

Virginia Synod is a North Carolina non-profit organization which, like Caroline Furnace, is a § 501(c)(3) exempt organization. (Virginia Synod Ex. 9; *see* 26 U.S.C. § 501(c)(3) (2004).) Virginia Synod was organized "exclusively for religious purposes" and its members are not entitled to distribution of any profits. (Virginia Synod Ex. 3.) Excepting salaries and administrative overhead, all of Virginia Synod's income goes toward the promotion of religious activities and other charitable and educational ends. (Virginia Synod Ex. 7.) Furthermore, plaintiffs have conceded that Virginia Synod is a charitable organization. (Pls. Mem. Opp'n Virginia Synod's Plea of Char. Immun. 1.) Because Virginia Synod exists and operates as a charitable organization, it cannot be liable for torts against beneficiaries of its charitable work.

In order for plaintiffs to prevail on a tort claim against Virginia Synod, they must show that Samuel Shull was not a beneficiary of Virginia Synod's charitable activities at the time of the incident. "[I]mmunity does not extend ... to invitees or strangers having no beneficial relationship to the charitable institution." *Thrasher*, 239 Va. at 340-41. An individual will not be a beneficiary when the relationship between an organization and the individual is "too attenuated and indirect" to the organization's purpose in conducting its charitable activities. *Straley*, 243 Va. at 37. A beneficiary relationship does not depend solely on personal contact between organization and individual. *See Roberts*, 27 Va. Cir. at 128 (recognizing beneficiary relationship between plaintiff and defendant Wesley Foundation, which had no contact with plaintiff other than making donations that enabled defendant Agency on Aging to run charitable lunch program). Virginia Synod, in the course of its furtherance of religious activities, charitable and educational ends, makes substantial contributions to Caroline Furnace, $17,800 in fiscal 2001, or about 7% of Caroline Furnace's total income and over 70% of Caroline Furnace's total synodic support. (Virginia Synod Ex. 8; Pls. Ex. 5.) Caroline Furnace clearly depends on the donations of Virginia Synod to further its own charitable goals. Here, Caroline Furnace used the contributions of Virginia Synod to provide the "? Kids" with an opportunity to enjoy nature and fellowship. The relationship between Virginia Synod and Samuel Shull is not so "attenuated and indirect" that Samuel Shull cannot be considered a beneficiary of Virginia Synod's charitable activities.

The charitable immunity doctrine rests on public policy, and shielding Virginia Synod from liability here comports with those policy goals. *See,*

*e.g., Hill v. Leigh Mem'l Hosp.,* 204 Va. 501, 503-07 (1963); *Radosevic,* 633 F. Supp. at 1086. If donors to charitable organizations could be held liable for torts committed by charitable organizations, particularly when the donors themselves are not entitled to charitable immunity, the many incentives to donate to charities would be eradicated by a fear of vicarious liability. Because Virginia Synod is a charitable organization and Samuel Shull was a beneficiary of its charitable activities, charitable immunity shields Virginia Synod from tort liability.

Because both defendants are insulated from liability and plaintiffs are barred from recovery, it is unnecessary to determine whether the alleged agency relationship actually existed for purposes of the tort claim.

## Conclusion

Defendants Caroline Furnace and Virginia Synod are both charitable organizations under Virginia's charitable immunity doctrine. Plaintiffs' decedent Samuel Shull was, at the time of the drowning, a beneficiary of the charitable activities of both Caroline Furnace and Virginia Synod. Caroline Furnace and Virginia Synod are thus each shielded from liability for negligence in the death of Samuel Shull. For the foregoing reasons, plaintiffs cannot make any recovery against the defendants on the negligence claim. Count I of plaintiffs' motion for judgment against defendants Virginia Synod and Caroline Furnace is dismissed with prejudice.