Phyllis P. Harris

v.

Norfolk Botanical Garden Society, Inc.,
d/b/a Norfolk Botanical Garden

September 11, 2009

Case No. CL09-105

BY JUDGE JOHN R. DOYLE, III

This matter came before the Court for argument on August 24, 2009, upon the three motions of the defendant, by counsel, which are as follows:

(1) A special plea of charitable immunity;

(2) A plea in bar based on the exclusivity provisions of the Workers' Compensation Act;

(3) A motion for summary judgment based on contributory negligence or, in the alternative, assumption of risk.

The court addresses each in turn below.

## I. *Special Plea of Charitable Immunity*

### A. *Facts*

The parties stipulate that the Defendant, Norfolk Botanical Garden Society, Inc., d/b/a Norfolk Botanical Gardens, is a charitable institution; that it is organized with a recognized charitable purpose; and that it operates in fact in accord with that purpose.

At the time of her injury, October 15, 2005, the Plaintiff, Phyllis Harris, was a dues paying member of the Norfolk Botanical Garden Society. As such, she was entitled to enter the grounds free of charge during operating hours, as well as certain other benefits such as lectures. On that specific date, Harris was present on the grounds of the Botanical Gardens to participate as a volunteer in the annual "Pull & Plant Day" program, having applied for and been accepted as a volunteer for the Norfolk Botanical Garden Society on September 30, 2005.

On October 15, 2005, Harris reported to the grounds of the Botanical Gardens and was assigned to weed a designated area within the grounds, the Virginia Native Plant Garden. She was transported to this area via a trolley. Harris spent approximately three hours weeding this area (the "Pull & Plant Day" program was to occur from 9 a.m. to 12 p.m.). At the conclusion of this period, Harris accepted a ride in the bed of a pick-up truck from an employee of the Norfolk Botanical Garden Society back up to the front of the complex where her alleged injuries ensued.

Harris was granted leave to file an Amended Complaint alleging gross negligence.

## B. *Analysis*

The Virginia Supreme Court discussed at length the doctrine of charitable immunity in the case of *Ola v. YMCA of South Hampton Roads*, 270 Va. 550 (2005).

The first prong of whether a defendant is entitled to charitable immunity in a particular situation is that which was stipulated to above. The second prong of the test is the issue here. That prong is that Norfolk Botanical Garden Society must establish that Harris was a beneficiary of the charitable institution at the time of the alleged injury. *See Ola* at 556.

As described above, Harris was a member of the Norfolk Botanical Garden Society on the date of her injury. As such, she visited the Botanical Gardens to enjoy their beauty and relaxing effect. She also attended lectures given by the Norfolk Botanical Garden Society.

On the day of her injury, she was present on the grounds of the Botanical Gardens solely and specifically to volunteer to weed in the Virginia Native Plant Garden area within the Gardens. In order to engage in this activity, Harris had to apply for and be accepted into the volunteer program of the Society.

The Norfolk Botanical Garden Society argues that, since Harris was a member of the Society, she was one of their beneficiaries. The analysis ends there. Any injury in tort she suffered caused by the Society while on the grounds of the Botanical Gardens was subject to charitable immunity.

Harris argues that her status as a beneficiary should be separated from her status as a volunteer, that is, because she was present on the day of her injury to provide volunteer labor to the Norfolk Botanical Garden Society, she was not a beneficiary that day; the flow of charity was reversed on the day of her injury.

In the *Ola* opinion, the Supreme Court discussed at length the doctrine of charitable immunity. This discussion does focus on classes of individuals: beneficiaries, strangers, and invitees. Charitable organizations have immunity against suits in tort by their beneficiaries, but not by strangers or invitees.

Ola was a member of the YMCA. Of note, however, is that the Court's analysis did not end there. The Court went on to consider the activity of the Plaintiff on the day of her injury:

> Under this well-reasoned precedent, Ola clearly was a beneficiary of the YMCA's charity, not because she received membership at a reduced fee, *but because she was participating in the YMCA swimming program at the time of her injury. The parties stipulated that just prior to the attack, Ola had used the YMCA's swimming pool.* As the trial court noted, "Swimming clearly provides an excellent means of maintaining physical and mental well-being and thus can be characterized as a part of the YMCA's charitable benefits." Thus, whether Ola paid a full or reduced membership fee, *she was a beneficiary of the charitable bounty of the YMCA because she actually used YMCA facilities* which depend on charity for their existence and operation.

*Ola* at 565 (emphasis added).

Other cases have similarly focused upon the nature of the plaintiff's activity in determining whether a charity–beneficiary relationship existed at the time of the injury.

> a beneficiary is a person who receives something of value, which the organization by its charitable purpose undertakes to provide. An individual is "a beneficiary of [charitable] bounty" if that individual's interaction with the entity "is related to the charitable purpose of the [organization]."

*Ola* at 564.

Thus, entering the premises of a charitable institution to view artwork renders that person a beneficiary of the charitable organization. *Egerton v. R. E. Lee Memorial Church*, 395 F.2d 381, 384 (4th Cir. 1968); *Bodenheimer v. Confederate Memorial Ass'n*, 68 F.2d 507, 509 (4th Cir. 1934).

The Norfolk Botanical Garden Society called Harris as a witness. In Harris's words, she found the garden relaxing but was "working" on the day of her injury. Some persons may find the entire horticultural gardening experience, including weeding, relaxing and pleasurable. The court will not impute such to Harris, especially where, as here, the factual record is to the contrary. Similarly, there is nothing in the record to support an argument that the weeding experience was educational. Thus the court finds that Harris was not receiving anything of value, i.e. the charitable benefits afforded by visiting the gardens, from the Norfolk Botanical Garden Society on the day of her injury.

The question becomes does membership that gives one the right to visit and enjoy the charitable bounty mean that, even if one visits for a very different purpose and realizes no benefit, one even then is considered a beneficiary? The court cannot so find.

Harris's status on the day of her injury was that of an invitee who was on the grounds of the Botanical Gardens specifically and only to provide volunteer labor. Thus the Court overrules the Norfolk Botanical Garden Society's Special Plea of Charitable Immunity.

## II. *Plea in Bar Based on the Exclusivity Provisions of the Workers' Compensation Act*

### A. *Facts*

The facts as recited above apply as well to this plea with some relevant additions.

As mentioned above, Harris was told what day and time to report to work as a volunteer. She was told what to wear. She was told she was to weed and was taken to the area she was assigned to weed. Her continued participation in the volunteer program was subject to review.

Volunteers received special benefits. For someone who was already a member, the additional benefits were letters of reference for school or job opportunities, annual volunteer holiday and appreciation events, access to fourteen local museums. (*See* Exhibit 3A.)

These benefits were provided to the volunteer upon admission to the volunteer program and receipt of the volunteer badge, which could be used to gain free admission to the listed museums. Harris was accepted into the volunteer program on September 30, 2005.

B. *Analysis*

Virginia Code § 65.2-307 provides that the rights and remedies under the Workers' Compensation Act "shall exclude all other rights and remedies" of an employee injured during the course of her employment.

An "employee" under the Act is defined in part as "every person . . . in the service of another under any contract of hire or apprenticeship, written or implied. . . ." However, it does not include non-compensated employees of [charitable] organizations. Va. Code § 65.2-101.

The question to be determined is whether Harris was an employee of the Norfolk Botanical Garden Society at the time of her injury; and, if so, whether she was compensated for her work.

The relationship between a volunteer and the Norfolk Botanical Garden Society had all the hallmarks of an employer–employee relationship. The Society controlled who was accepted and retained as a volunteer and exercised considerable control over the volunteers and all aspects of their work. The issue in this case is whether Harris was compensated for her work.

A "contract for hire" has been defined as "an agreement whereby an employee provides labor or personal services to an employer in exchange for wages, remuneration, or some other thing of value from the employer." *Jackson v. Ratliff Concrete Co.*, 8 Va. App. 592, 294, 382 S.E.2d 494, 495 (1989).

The Norfolk Botanical Garden Society points to the volunteer benefit package as compensation. They argue that the free admission to the fourteen museums is something of value and, therefore, remuneration. In support of this position, they cite a Virginia Workers' Compensation Commission case in which a volunteer usher at the opera was considered to have been compensated when, after ushering the patrons to their seats and handing out programs, she was allowed to remain and watch the performance for free and receive a free drink during intermission. *See Atkinson v. Carpenter Center*, V.W.C. No. 160-55-24 (1993).

The volunteer badge was of value to Harris only if she actually was interested and went to one of the other museums. There is no evidence in the record that Harris was interested in going to any of the other museums and there is no evidence that this benefit was motivation for her enrollment as a volunteer or that she even knew about it until after she signed up.

Additionally, the benefit was given in return for entering the volunteer program. The compensation here is simply in return for being added to the list of volunteers. It is complete at that time. The benefit was in effect even before Harris actually worked as a volunteer.

The benefit remained the same regardless of whether the volunteer worked for one hour or 100 hours, one day or 100 days. There is no evidence in the record of any requirement for any minimum number of hours to be worked for any set period of time. It was in no way tied to the actual labor performed by the volunteer. The amount of the compensation depended upon the interest the volunteer had in attending the other museums. One volunteer could work 200 hours and not attend any of the museums. Another volunteer could work zero hours and visit all fourteen museums.

So Harris could have attended every museum on the list regardless of whether she pulled a weed on "Pull and Plant Day." Her decision to appear and pull weeds for three hours on the day of her injury was purely gratuitous in that she received absolutely no additional compensation for it. Any volunteer's decision to work on any particular day similarly would have been a pure donation of her time with no compensation for that work.

Given this factual scenario, while it appears that Harris was compensated for becoming a volunteer, the court cannot find that she was compensated for her labor actually rendered on the day of her injury. Her decision to work pulling weeds on the day of her injury was purely gratuitous; she was a non-compensated employee of a charitable organization and as such does not come under the Workers' Compensation Act.

Accordingly, the Norfolk Botanical Garden Society's Plea in Bar Based on the Exclusivity Provisions of the Workers' Compensation Act is overruled.

### III. *Motion for Summary Judgment*

Summary judgment may only be entered if no material fact is genuinely in dispute. *Renner v. Stafford*, 245 Va. 351, 353, 429 S.E.2d 218, 220 (1993); Va. Sup. Ct. R. 3:18. When a court considers a motion for summary judgment, "the court must rule, as a matter of law, on the sufficiency of the evidence; it [should] not weigh the evidence as a finder of fact." *Piland Corp. v. League Constr. Co,*. 238 Va. 187, 189 (1989). The deciding court may grant summary judgment only if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *See e.g., Freeman v. Norfolk,* 221 Va. 57, 60 (1980).

In this case, summary judgment is not appropriate because there is not sufficient evidence to uphold a finding for Norfolk Botanical Garden Society at this stage of the proceedings. In evaluating the summary judgment motion, the Court must view the evidence in a light most favorable to Harris, and in doing so, there is not sufficient evidence to find for the Society as a matter of law on contributory negligence or assumption of the risk defenses.

For contributory negligence to be used as an affirmative defense, the defendant must prove by an objective standard that the plaintiff failed to act as a reasonable person would have acted for his or her own safety under the circumstances. *Moses v. Southwestern Va. Transit Management Co.*, 273 Va. 672, 643 S.E.2d 156 (2007); *Fultz v. Delhaize America, Inc.*, 278 Va. 84, 677 S.E.2d 272 (2009). The issue whether a plaintiff is guilty of contributory negligence is ordinarily a question of fact to be decided by the fact finder. *Id.* The Court should rule on contributory negligence as a matter of law only when reasonable minds could not differ about what conclusion could be drawn from the evidence." *Moses*, 273 Va. at 678, 643 S.E.2d at 159-60.

In order to prevail on an argument of contributory negligence as a matter of law, the Norfolk Botanical Garden Society must prove that Harris failed to act to ensure her safety in a way that any reasonable person would have acted. In the case at hand, there is a lack of evidence at this point to support this contention. It is unknown what condition the tailgate that allegedly was the cause of Harris's injury was in. It is further unknown, even if the tailgate is assumed to have been defective, whether Harris was aware of a defect. This differentiates the case at hand from the cases cited by the defendant, *Virginia Beach v. Starr*, 194 Va. 34, 72 S.E.2d 239 (1952); *Ward v. Clark*, 163 Va. 770, 177 S.E. 212 (1934); and *Hillsville v. Nester*, 215 Va. 4, 205 S.E.2d 398 (1974), where the plaintiff was always aware of the defect before the accident. Moreover, it is unknown from the current record the actual cause of Harris's fall. Indeed, the Court is not even aware of any of the characteristics of the vehicle in question. It has only been described as a "pick-up truck." It is also unclear to the Court whether other persons were present at the time of Harris' fall.

Based on the evidence in the record at this stage, the Court does not find it prudent to disallow Harris from recovery due to contributory negligence. As stated above, the issue of contributory negligence is more appropriately left to the fact-finder once an opportunity to produce more evidence has been provided.

The defense of assumption of the risk "connotes venturousness and involves a subjective test, i.e., whether a plaintiff fully understood the nature and extent of a known danger and voluntarily exposed himself to it." *Waters v.*

*Safeway Stores, Inc.*, 246 Va. 269, 271 (1993) (*quoting Artrip v. E. E. Berry Equip. Co.*, 240 Va. 354, 358 (1990)). Assumption of the risk is a principle based almost exclusively on the plaintiff's subjective intent. Assumption of the risk, like contributory negligence, is a defense based on a factual review of the case and, therefore, is best left to the fact finder unless reasonable minds could not differ on the issue. *Id.*

In order to prevail on an argument of assumption of the risk as a matter of law, the Norfolk Botanical Garden Society would have to prove that Harris knew of the danger, appreciated the extent of the danger, and voluntarily exposed herself to it. No evidence in the record indicates Harris's subjective intent and mindset when she climbed onto the truck sufficiently enough to disallow her recovery as a matter of law due to assumption of the risk. Due to the lack of evidence, assumption of risk is better left as an issue for trial.

Thus, the Court will overrule the Defendant's Motion for Summary Judgment. The Defendant is free to revisit these issues at trial.

## IV. *Conclusion*

The Court will deny the Norfolk Botanical Garden Society's Special Plea of Charitable Immunity. The Court will deny the Norfolk Botanical Garden Society's Plea in Bar Based on the Exclusivity Provision of the Workers' Compensation Act. Finally the Court will deny the Norfolk Botanical Garden Society's Motion for Summary Judgment based on contributory negligence or, in the alternative, assumption of risk.